# EXHIBIT  A

**NOTICE TO FEDERAL DISTRICT COURT OF REMOVAL OF ACTION FROM STATE SUPERIOR COURT (PURSUANT TO 28 U.S.C. § 1441(B) (FEDERAL QUESTION)**

**Joel Warne [In Pro Per] v. City and County of San Francisco, et al.**

NO SUMMONS ISSUED

ENDORSED
F I L E D
Superior Court of California
County of San Francisco

OCT 2 4 2016

CLERK OF THE COURT
BY: _____ ARLENE RAMOS
Deputy Clerk

1  Joel Jennings Warne
2  20523 CR 146
   Tyler, TX 75703
3  415-815-8512
   JoelJWarne@icloud.com
4

5  *In Propria Persona.*

6

7              **SUPERIOR COURT OF CALIFORNIA**

8         **IN AND FOR THE COUNTY OF SAN FRANCISCO**

9                    **UNLIMITED CIVIL**

10                                         Case No. CGC-16-555010
   Joel Warne [in pro per]            )
11                                     )
                                       )
12            Plaintiff,               )   **COMPLAINT FOR DAMAGES**
          vs.                          )
13                                     )
                                       )   Negligence;
14  City and County of San Francisco,  )   Medical Negligence (x2);
                                       )   Professional Negligence;
15  University of California Regents,  )   Battery (x3);
                                       )   Assault (x2);
16                                     )   False Imprisonment (x3);
   Dr. Andrea Tenner (Lic. # 132134) in her )  False Statements on Medical Records /
17  official and personal capacities);  )       Defamation (x2);
18                                     )   Intentional Infliction of Emotional
   DOES 1 through 1000, inclusive,     )       Distress (x4);
19                                     )   Violation of 4th Amendment Rights (x3);
20            Defendants.              )   Violation of 5th and/or 14th
                                       )       Amendment Rights (x2);
21                                     )   Vicarious Liability (x4)
22                                     )
23                                     )
                                       )
24                                     )   Date: October 20, 2016
   _____)
25

26

27  Plaintiff JOEL JENNINGS WARNE, appearing in *pro per*, hereby alleges as follows:

28

                              - 1 -

           Joel Jennings Warne v City and County of San Francisco, et al.

## I. PARTIES

1. Plaintiff is a non-attorney labor representative by trade, who moved to the City and County of San Francisco on or around February 1, 2015, pursuant to an offer of employment. Plaintiff was a resident of San Francisco until February 14, 2016. During the period in question, Plaintiff remained, at all times, a resident of the City and County of San Francisco and of the State of California.

2. Respondent CITY AND COUNTY OF SAN FRANCISCO ("CCSF") is a "local public entity" within the definition prescribed by Government Code ("Govt Code") Sec. 900.4.[1], which establishes, administers, and enforces the laws of the State of California within its jurisdiction as well as its own ordinances. Its legislative body is the San Francisco Board of Supervisors, and its chief executive is San Francisco Mayor Edwin Lee. The CCSF administers a hospital, presently known as the "Zuckerberg San Francisco General Hospital and Trauma Center ("SFGH"), paid for by patient fees, tax revenues, various public grants, and is as defined by Govt Code 854, for which part of its staff are employed by the San Francisco Department of Public Health ("SFDPH"), private service vendors, and, at least some, of its medical staff, are employed by Respondent UNIVERSITY OF CALIFORNIA REGENTS ("UC Regents"). The CCSF is subject to the Tort Claims Act ("TCA"), codified at Govt Code Sec. 810, et seq.[2]

3. Respondent UC Regents is a "public entity" within the definition of Govt Code Sec. 811.2, and serves as the governing body of the University of California System and its various medical centers throughout the State. The UC Regent's professional medical personnel also provide most, if not all, direct patient care at the SFGH. The UC Regents is exempt from the

---

[1] Govt Code Sec. 811.2. "Public entity" includes the state, the Regents of the University of California, the Trustees of the California State University and the California State University, a county, city, district, public authority, public agency, and any other political, subdivision or public corporation in the State.

[2] Unless specifically stated, use of "CCSF" refers to the City and County of San Francisco, inclusive of all its legislative and executive bodies and agencies, subordinate public agencies and political subdivisions, or entity or person who or which performs work on the behalf of the same.

- 2 -

1   Administrative Claims Act[3] and its statutory limitations on filing formal complaints. The UC

2   Regents is the appropriate entity to receive service of complaints and litigation against its

3   employees who are acting within their official capacities, against University of California

4   campus, and against the various medical centers to whom medical personnel are provided.[4]

5   The UC Regents' primary place of business is not within City and County of San Francisco,

6   except that it performs part of its business in the CCSF in that it operates at least one public

7   university—the University of California San Francisco Medical Center ("UCSF")—therein

8   and provides professional medical personnel to the SFGH pursuant to agreement between the

9   two (2).

10  4.  Respondent Dr. Andrea Tenner ("Dr. Tenner"), based on Plaintiff's belief, is a physician and

11      emergency medicine instructor, as well as faculty at the University of California San

12      Francisco Medical Center ("UCSF"), whose primary places of business include both the

13      UCSF and Zuckerberg San Francisco General Hospital ("SFGH"). She is alleged to be

14      employed by the UC Regents but provides emergency medical services to patients at the

15      SFGH based on an agreement for services between the SFGH and the University of

16

17  5.  Respondents DOES 1-1,000 are either unknown to Complainant by identity or the degree to

18      and/or manner in which each was involved in these allegations; therefore, they are sued

19      fictitiously. This Action shall be amended, as necessary, to incorporate their identities and

20      may be amended to incorporate additional charges as that information becomes ascertainable.

21  **II.  JURISDICTION AND VENUE**

22

23  _____

24  [3] Govt Code Sec. 905.6.  This part does not apply to claims against the Regents of the University of California.

25  [4] 416.50.  (a) A summons may be served on a public entity by delivering a copy of the summons and of the complaint to the clerk, secretary, president, presiding officer, or other head of its governing body.

26

27      (b) As used in this section, "public entity" includes the state and any office, department, division, bureau, board, commission, or agency of the state, the Regents of the University of California, a county, city, district, public authority, public agency, and any other political subdivision or public corporation in this state.

28

- 3 -

6.   The CCSF's Charter states at Sec. 3.100:

> *The Mayor shall be the chief executive officer and the official*
> *representative of the City and County, and shall serve full time in that capacity.*
> *The Mayor shall devote his or her entire time and attention to the duties of the*
> *office, and shall not devote time or attention to any other occupation or business*
> *activity. The Mayor shall enforce all laws relating to the City and County, and*
> *accept service of process on its behalf.*
>
> *The Mayor shall have responsibility for:*
>
> *1. General administration and oversight of all departments and governmental*
> *units in the executive branch of the City and County;*
>
> *2. Coordination of all intergovernmental activities of the City and County;*
>
> *3. Receipt and examination of complaints relating to the administration of the*
> *affairs of the City and County, and timely delivery of notice to the complainant of*
> *findings and actions taken;*
>
> […]

(Truncated; emphasis added.)

7.   On February 5, 2016, within the statutory six-month period immediately following an injury alleged to have been caused by a public employee,[5] Plaintiff filed an administrative claim with the CCSF's City Comptroller's Office. (Exhibit A-1 (February 5, 2016, administrative claim).) The CCSF responded, via Claims Adjustor Grace Glenn, on or around April 26, 2016, rejecting Plaintiff's claim either by denying the allegations or deferring liability to the UC Regents (Exhibit B (April 26, 2016, notice of action rejecting February 5, 2016, claim).) Upon receipt of a response either acting upon or rejecting a claim by a local public entity, the injured party has six months to file an action in civil court.[6] Plaintiff's complaint is both

---

[5] Govt Code Sec. 911.2(a): A claim relating to a cause of action for death or for injury to person or to personal property or growing crops shall be presented as provided in Article 2 (commencing with Section 915) not later than six months after the accrual of the cause of action. […]

[6] Govt Code Sec. 945.6(a)(1): If written notice is given in accordance with Section 913, not later than six months after the date such notice is personally delivered or deposited in the mail.

- 4 -

1    timely and properly before the Court with respect to the allegations set forth against the

2    CCSF.

3    8.   Since the UC Regents is expressly exempted from the procedures required under the

4        Administrative Claims Act, the timeliness of formal complaints against its facilities and

5        employees acting in their official capacities are governed by the statute of limitation specific

6        to the allegation(s). While the statute of limitations for claims of medical malpractice

7        generally expires one year after the accrual of injury, that limitation is tolled by fraud and

8        concealment on the behalf of the provider.[7] Plaintiff believes he can establish sufficient

9        evidence to demonstrate fraud and false concealment; therefore, this Complaint for Damages

10       is properly before the Court and timely in its filing against both the UC Regents and the

11       CCSF, in so far as the CCSF administers the SFGH.

## III. FACTS GIVING RISE TO CAUSES OF ACTION

13   9.   On August 8, 2015, at or around 9:15 p.m., Plaintiff self-admitted to SFGH after suffering

14       adverse reaction to what he believed to be a long-prescribed medication. He was taken back

15       into a triage and evaluation room, where he explained his current symptoms and medical

16       history to the nurse. He was promptly taken down a corridor to an adjacent corridor and into

17       a trauma room where he was given a cup to provide a toxicology screen. Upon providing the

18       sample, the Plaintiff was laid in a gurney where an 'IV' catheter was inserted in his arm or

19       hand and and he was purportedly only administered sodium chloride to ensure proper

20       hydration. At, around, or between 9:38 and 9:45 p.m. on August 8, 2015, an

21       electrocardiograph ("ECG") was conducted of Plaintiff's cardiac status.

22   10.  At, around, or between 9:50 p.m. and 10:00 p.m., Plaintiff was rolled out of the trauma room

23       in his gurney where he was introduced to Dr. Andrea Tenner ("Dr. Tenner"). Dr. Tenner

24       performed the initial neurological examination, questioned Plaintiff about his symptoms, and

25       performed other general clinical evaluations.

---

[7]Civ. Proc. Code ("CCP") Sec. 340.5

Joel Jennings Warne v City and County of San Francisco, et al.

11. At, around, or between 10:00 and 10:10 p.m., Plaintiff was rolled on his gurney back toward or within the vicinity of the original trauma room in which the IV catheter was applied and ECG performed. He was left on the gurney in a public corridor for an indeterminate amount of time. Plaintiff's gurney suddenly moved approximately three to four feet to the center of the corridor and was then violently pushed with sufficient force to cause Plaintiff to jump to his knees on the gurney so that he could land on his feet if the gurney was to hit someone, something, or otherwise tip over.

12. While attempting to sleep, left on a gurney in the middle of a public corridor, Plaintiff was subjected to taunts and jeers from members of the medical and paraprofessional staff, whose names, titles or classifications, and employing agencies are not known at the present time.

13. At, around, or between 10:30 p.m. and 10:30 p.m., Plaintiff experienced a set of cardiac symptoms which he believes to have included—high blood pressure, tingling in the fingertips, coldness of the hands and feet, muscular fatigue, a fluttering sensation inside the chest in the immediate vicinity of his heart; and low heart rate.

14. Medical staff misrepresented Plaintiff's lab results to him as well as his cardiac health—at one point at, around, or between 10:45 to 10:55, Dr. Tenner refused to provide him a copy of his toxicology urinalysis report; additionally, Dr. Tenner falsely denied the medical capability to test for a certain category of illicit "date rape drugs," which Plaintiff had suspected that he had unwittingly ingested as cause for admission; at another point, an unidentified individual, whose title or classification and employing agency are unknown, misrepresented the cardiac monitor data to him; throughout the evening, medical staff withheld "critical lab results", received at or around 10:06 p.m. on August 8, 2015, showing hypokalemia, which is a deficiency of potassium, an atomic element used by the heart to regulate its beat; and medical staff withheld the result of an ECG, recorded as described above, which established an "abnormal ECG," characterized by an "intraventricular conduction delay" ("tachycardia"); and medical staff withheld vital signs which indicated stage 1 hypertension.[8]

---

[8] The medical record acknowledges that "[Plaintiff] was presenting with palpitations;" [Plaintiff] mildly somnolent."

- 6 -

15. Despite providing the full range of services—"inpatient, outpatient, emergency, diagnostic, and psychiatric services for adults and children"[9]—Plaintiff was never seen by or referred to a cardiologist and a follow-up ECG, after receiving the critical lab results and the onset of symptoms, was never conducted to confirm the original result.

16. Outraged by the misrepresentation of medical data and the refusal to provide toxicology and other lab results, Plaintiff made multiple requests to call his mother beginning at or around 11:15 p.m. When medical staff demanded to know why Plaintiff wanted to speak to his mother, in response to which Plaintiff explained that she was a registered nurse, the request to make the phone call was denied—at one point Dr. Tenner initially authorized the call but three times took the phone out of Plaintiff's hand and/or depressed the latch ending the call to prevent the call from being made, and then ordered him to "sit the fuck back down on the gurney."

17. At, around, or between 11:30 and 11:40 p.m., Plaintiff demanded discharge and transport to a private hospital, a request which was denied. When Plaintiff made it known of his intent to discharge himself to "seek competent care elsewhere." Dr. Tenner responded by calling in a "code 415," believed to mean a combative patient, the Sheriff's deputies which provide security to the facility. Within minutes, Plaintiff was held down by at least one CCSF Sheriff's deputy while medical staff placed Plaintiff in four-point restraints and forcibly administered antipsychotic medications by IV or intramuscular injection without his consent and over his right to refuse antipsychotic medications. Prior to being detained, Plaintiff was not questioned by responding Sheriff's deputies prior to their assistance with his detention and forced administration of psychotropic medication.

18. During the skirmish, medical staff went through Plaintiff's personal clothing and extracted his personal iPhone from his shorts pocket. When someone from behind Plaintiff, now bound in his gurney in a public hallway of the emergency department, exclaimed: "Get his phone!" his personal iPhone was taken into an adjacent room and out of his personal possession.

---

[9] http://zuckerbergsanfranciscogeneral.org, retrieved September 20, 2016

Joel Jennings Warne v City and County of San Francisco, et al.

19. Shortly thereafter, a young lady appeared from the assembled crowd of Sheriff's deputies and medical staff with a folded paper in her hand. While, according to the medical record ultimately provided and in four-point restraints, she physically placed a pen in Plaintiff's hand. Plaintiff cried, stating that he wanted an attorney and that he did not want to sign anything. The young lady physically forced the pen to the folded paper, telling Plaintiff to "stop resisting," and refusing to allow him to read the document he was being forced to sign.

20. Plaintiff repeatedly demanded a "trial," referring to a competence hearing and/or for access to an attorney or representative. The requests were ignored. As a punitive measure, Plaintiff was rolled into a darkened trauma room where he shortly thereafter lost consciousness.

21. Plaintiff was discharged the following morning at, around, or between 5:00 and 6:00 a.m. on August 9, 2015, still under the influence of psychotropic medications and without any discharge instructions, explanation for his detention, identification or description of psychotropic medications and/or their side effects, with the exception of a purple plastic bag that contained his clothing and personal iPhone.

22. Plaintiff avers that agents or officers of an unidentified law enforcement agency were involved in Plaintiff's treatment, coordinated the detention and fabricated cause for the same, questioned Plaintiff pursuant to a criminal investigation while in 4-point restraints, under the influence of psychotropic medications, with his request for an attorney or representative denied, with no knowledge of the charges levied against him or the cause for the detention and/or *de facto* arrest, and while unmirandized. Plaintiff alleges that, in so far as law enforcement agents were or may have been involved, the detention constituted a *de facto* arrest, during which Plaintiff was subjected to gross law enforcement misconduct.

23. Plaintiff avers that Respondent(s), for whom the liability has yet to be apportioned, either committed a medication error, which led to severe cardiac and other symptoms, and therefore sought to keep him under the direct care of Dr. Tenner—not having him evaluated by a psychiatrist, not having him evaluated by a cardiologist, refusing to allow him to speak to his mother once it was discovered that she was a registered nurse, and having him restrained and forcibly administered psychotropic medications upon threat of discharge to another hospital

- 8 -

Joel Jennings Warne v City and County of San Francisco, et al.

1   —or that medication, yet to be identified and in unknown amounts was maliciously

2   administered to Plaintiff, potentially and likely long before claimed in the medical record,

3   maliciously with the intent to punish him, for staff convenience, and/or as chemical restraint

4   in the absent of a clinical or psychiatric emergency.[10]

5   24. On August 25, 2015, after having no received so much as a bill for his admission, Plaintiff

6   filed a series of two requests under the CPRA to both the Sheriff's Department ("SFSD") and

7   the San Francisco District Attorney's Office ("SFDA") for records "pertaining to [Plaintiff],

8   [Plaintiff's] person, or [Plaintiff's] likeness," as well as a request for patient records, via fax,

9   to the SFGH records department pursuant to PAHRA.

10   25. On August 26, 2015, Plaintiff submitted a nearly identical request to the San Francisco Police

11   Department ("SFPD"), requesting records that pertain to the Plaintiff.

12   26. On or around August 30, 2015, Plaintiff received a copy of a bill for services which was

13   grossly incomplete—not listing information purportedly administered, not including the cost

14   for the actual admission or professional medical services, etc.—with a final pay-by date of

15   September 17, 2015. The bill was printed on March 25, 2015, just after receiving Plaintiff's

16   request for patient records. Plaintiff posed questions to the SFGH bill department, inquiring

17   why he would be sent an incomplete bill. The billing department had no answer but agreed to

18   do a charge verification. Plaintiff subsequently received a second bill, dated September 18,

19   2015, the day after the final pay-by date on the original bill, which was different to the tune

20   of approximately $5,700.

21   

22   [10] 22 California Code of Regulations ("CCR") Sec. 72527(a)(23): "[Patients are guaranteed freedom] from psychotherapeutic drugs and physical restraints used for the purpose of patient discipline or staff convenience and to be free from psychotherapeutic drugs used as a chemical restraint as defined in Section 72018, except in an emergency which threatens to bring immediate injury to the patient or others. If a chemical restraint is administered during an emergency, such medication shall be only that which is required to treat the emergency condition and shall be provided in ways that are least restrictive of the personal liberty of the patient and used only for a specified and limited period of time."

25   22 C.C.R. Sec. 72528(c): "(c) Before initiating the administration of psychotherapeutic drugs, or physical restraints, or the prolonged use of a device that may lead to the inability to regain use of a normal bodily function, facility staff shall verify that the patient's health record contains documentation that the patient has given informed consent to the proposed treatment or procedure. The facility shall also ensure that all decisions concerning the withdrawal or withholding of life sustaining treatment are documented in the patient's health record."

Joel Jennings Warne v City and County of San Francisco, et al.

27. On August 31, 2015, just five days after submitting Plaintiff's CPRA request to the SFPD, Officer Steven Gomez, Badge Number 2317, appeared at Plaintiff's door to perform a "welfare check." Once Plaintiff's property manager exited from Gomez' field of view, Gomez directed Plaintiff to put his hands on his head; performed a pat down of his loose clothing; placed Plaintiff in handcuffs; asked for authorization to enter Plaintiff's apartment, a request which Plaintiff refused; Gomez then mad a threat of physical threat against Plaintiff to coerce access to Plaintiff's apartment, but Plaintiff again refused; Gomez proceeded to open the door to Plaintiff's apartment and entered without consent or probable cause; once he conducted an unlawful search of Plaintiff's apartment, he released Plaintiff and vacated the premises. Plaintiff immediately filed a complaint with the Office of Citizen Complaints, an investigative organ of the San Francisco Police Commission charged with investigating complaints of law enforcement misconduct. On August 17, 2016, the Office of Citizen Complaints sustained four allegations against Gomez:

27.1.  Unwarranted Action by placing Plaintiff in handcuffs without cause;

27.2.  Unwarranted Action by entering Plaintiff's apartment without cause;

27.3.  Unwarranted Action by conducting a search of Plaintiff's apartment without cause;

27.4.  Conduct Reflecting Discredit on the [SFPD] by behaving inappropriately;

(Exhibit # (August 17, 2016, Office of Citizen Complaints summary of preliminary findings).)

28. On September 2, 2015, Plaintiff filed a grievance with the Patients' Advocate at SFGH via facsimile. Approximately a week later, Plaintiff received confirmation of receipt and on September 9, 2015, Plaintiff received a voicemail from Patricia Carr, SFGH emergency nursing director, stating that she had been assigned to investigate Plaintiff's grievance. Plaintiff called Ms. Carr back approximately four (4) times between then and mid- to late-October 2015, at which point Plaintiff caught Ms. Carr off-guard, on the phone. Ms. Carr told Plaintiff, in proximate words, that "the Risk Manager [Jay Kloo] gave her specific instructions not to discuss [Plaintiff's] care with [him]." This was approximately one year prior to the filing of this litigation, and to date, Plaintiff has not received any decision with

- 10 -

1   respect to the patient grievance filed. (Exhibit #-1 (Facsimile ("FAX") Transmission

2   Confirmation) and Exhibit #-2 (SFDPH website listing the correct FAX number for

3   submitting patient grievances).)

4   29. On September 4, 2015, having not received a copy of his medical record as requested on

5   August 25, 2015, presented in person at SFGH to demand his patient records after being told

6   by a billing specialist that the billing department was "eight (8) months behind" on fulfilling

7   requests by mail. On that day, Plaintiff was provided fourteen pages which included an

8   "emergency record" of thirteen pages and an ECG report, as described above, of one page.

9      29.1.   The medical record was incomplete.

10      29.2.   The medical record was replete with incorrect and generally defamatory information:

11         29.2.1.   It attributes to Plaintiff "Hepatitis C," though Plaintiff does not suffer from

12              Hepatitis C and tested negative for such during July 2015, approximately a

13              month before his admission to SFGH, and again in December 2015, four months

14              afterward.

15         29.2.2.   It attributes to Plaintiff an ethnicity of "Eskimo," which is untrue as Plaintiff is a

16              caucasian/white male. He further notes is also largely considered an ethnic slur

17              by those who belong to the "Alaskan Native" or "Inuit" ethnicities.

18         29.2.3.   It attributes to Plaintiff false or exaggerated allegations of illicit drug binges.

19         29.2.4.   It attributes to Plaintiff both, nearly simultaneously, "[denials] of drug use;" and

20              multiple notes in which Plaintiff, purportedly, volunteered extensive drug

21              binging.

22         29.2.5.   It attributes to Plaintiff, almost simultaneously, two contradictory claims

23              regarding the use of telephone for personal and confidential calls:

24            29.2.5.1.   "Trying to get the [patient] to call his mother after saying she is an RN and

25                 will know. Refusing to give the number, now being restrained. Police here

26                 to assist."

27            29.2.5.2.   "… [M]other called and left a message per [patient's} request."

28

- 11 -

Joel Jennings Warne v City and County of San Francisco, et al.

29.2.6.   It attributes to Plaintiff a "current medication," referring to pharmaceutical medications already prescribed prior to admission, "Adaril," the name brand of the generic drug hydroxyzine, "by intramuscular injection"—Plaintiff was prescribed hydroxyzine but not until three days after discharge, on August 12, 2015, and not by intramuscular injection.

29.2.7.   It attributes to medical staff the administration of "Cogentin," the name brand of the drug benztropine mesylate ("benztropine") in an amount that includes a memo that reads: "subsequent different medication."

29.3.   With regard to Plaintiff's cardiac condition, as already described, Plaintiff was for the first time Plaintiff was made aware of the one ECG, as conducted an hour prior to the onset of symptoms and without follow-up thereafter, showing an abnormal ECG with an "intraventricular conduction delay;" that he had stage 1 hypertension at time of admission, followed by a blood pressure with a low dualistic pressure thereafter; that the "critical lab result" for potassium, which was sufficiently low to cause cardiac symptoms and not entirely unknown to be associated with cardiac arrest, was received at 10:06 p.m., read and confirmed to Dr. Tenner at 10:55 p.m., that corrective potassium chloride was ordered and acknowledged by the pharmacy at 10:56 p.m., corresponding with that onset of severe cardiac symptoms, and that the corrective potassium was not administered until 12:37 a.m. on August 9, 2015, nearly an hour after Plaintiff was placed in four-point restraints and forcibly administered psychotropic medications and nearly 2.5 hours after the critical lab result was first received.

29.4.   With regard to psychiatric and neurological statuses, the medic record is "all over the place":

29.4.1.   "SUICIDE SCREEN: Suicide screen is not applicable." 9:24 p.m.

29.4.2.   "MENTAL STATUS: Alert, Oriented." 9:24 p.m.

- 12 -

29.4.3.  "[Glasgow Coma Scale ("GCS")[11]: Eye opening: (4)- Spontaneous, Verbal: (5) -
Oriented/conversive, Motor: (6) - Obeys commands/Spontaneous, GCS Total:
15

29.4.4.  "Complex assessment performed, Patient arrives ambulatory, Steady gait,
History obtained from patient, Patient appears comfortable, Patient cooperative,
Patient alert, Oriented to person, place and time, Skin warm, Skin dry, Skin
normal in color, Mucous membranes pink, Mucous membranes moist, Patient is
well-groomed[.]" 9:35 p.m.

29.4.5.  "SUICIDE SCREEN: [Plaintiff] has negative thought of hurting self or
others[.]" 9:35 p.m.

29.4.6.  "GCS: GCS Total: 15"

29.4.7.  "[Plaintiff] still "feeling jittery". Resting in gurney, oriented. In hall in front of
RN station[.]," 10:35 p.m.

29.4.8.  "[Plaintiff] sat bolt upright in gurney. Says [']I feel like I am going to die[']
Says. [']I don't feel like my heart is racing, l just have a sense of doom.[']
Things the drugs he was taking were switched. Eye movements are rapid,
feeling like he is being watched and talked about (sic.)" 11:07 p.m.

29.4.9.  "Patient alert and oriented to person, place and time.," 11:34 p.m.

29.4.10. "NEURO: Neuro exam findings include patient oriented to person, place and
time, Cranial nerves intact, no focal motor deficits, no focal sensory deficits
(sic.)." 11:34 p.m.

29.4.11. "PSYCHIATRIC: Normal affect." 11:34 p.m.

29.4.12. "[Alert and oriented] x4, mildly somnolent[.]" 11:35 p.m.

29.4.13. "[Plaintiff] continues to thrash in gurney. restraints in place. unlabored resp.
thinks he is being euthanized. wants an attorney. […]" 12:16 a.m., August 9,
2015.

---

[11] The Glasgow Coma Scale, or "GCS," is a scale of neurological, psychological, and motor functions, the sum of the scores for each category ranging between 3, or completely inoperable and totally comatose, and 15, fully operable in each category. Plaintiff was designated as a 15, totally functional.

- 13 -

29.4.14. [Plaintiff] became concerned that he could not feel his heart beat. [Plaintiff] appeared agitated but with HR in low 100s with good pulses. Explained to [Plaintiff], but then one of his leads came off and apparently the monitor read "no pulse" and the pt became very agitated, stating that he was being "euthanized" and became aggressive with staff and increasingly anxious. Sheriff's department provided support, [Plaintiff] required restraints as he was paranoid and there was concern for his safety as well as the safety of others. [Plaintiff] given Ativan for agitation, but [Plaintiff] remained anxious and paranoid. Given Haldol and Cogentin with improvement. Endorsed to oncoming team—[Plaintiff] to metabolize and then reassess. If persistently paranoid, PES eval." 12:47 a.m.

29.4.15. "Received sign-out from Dr. [Charles E.] Murphy with [Plaintiff] at time conversant, alert and oriented x4, but subsequently [Plaintiff] became more paranoid and agitated, requiring restraints. Will allow to metabolize and reassess." 1:23 a.m.

29.5. With regard to cause for restraint, the medical record states:

29.5.1. [Plaintiff] restrained due to patient moving extremities that could result in injury, [Plaintiff] restrained due to patient persists in exhibiting aggressive or violent behavior that has significant potential for injury to self or other people[.]" 11:45 p.m., August 8, 2015.

29.6. Generally, the record indicates that Plaintiff had real and articulable symptoms related to his heart as confirmed by lab tests and a single ECG taken approximately an hour to the onset of symptoms. No follow-up ECG was conducted to confirm the original findings or to establish whether there had been a deterioration of the Plaintiff's cardiac condition. Instead, medical staff developed a narrative in the Plaintiff's medical record that is disjointed, often contradictory, and seemingly describes two different people at simultaneously: one espousing homicidal and/or suicidal threats and thrashing in his gurney as early as 9:35 p.m.; the other alert and oriented "x4," mildly somnolent, with

- 14 -

a "normal" psychiatric effect; it describes one hypothetical individual who was refusing to call his mother against the recommendations of medical staff, and another that was asking the medical staff to call her nearly simultaneously. Both of these hypothetical individuals were bound against their will and forcibly administered psychotropic drugs against their will; neither was evaluated by a psychiatrist or psychologist prior to discharge. In effect, as late as as 12:47 a.m. on August 9, 2015, Plaintiff was alleged to have been espousing homicidal and/or suicidal threats, and the only intervening factor before he was discharged was a period of psychotropic medication-induced sleep with no form of exit interview or evaluation, prior to discharge, that demonstrate these alleged threats did not persist.

29.7.   The medical record received did not include any confirmation of notification of rights, either orally or in writing, inclusive of the authorities under which Plaintiff's detention was justified, or any written documentation establishing informed consent or consent to psychotropic medications.

29.8.   The stated cause for restraints, "moving extremities," is nondescript and lacks sufficient detail to describe a scenario warranting the deprivation of Plaintiff's rights to informed consent (including the right to discharge) and the right to refuse psychotropic medications. "Moving extremities," in so far as its cited as cause for restraints, is an essential life function, and is consistent with the Plaintiff getting out of his gurney with the intent to discharge. The addition, "in a manner that could cause injury to self or others," does not mean anything: any movement of extremities has the potential to cause injury: someone could reasonably cause injury while using a fork to eat or tripping while walking out the door.

29.9.   The medical record additionally stated as cause for restraints, "aggressive or violent [toward self or others]," is also insufficient to describe a scenario sufficient to deprive the Plaintiff of his rights to informed consent. When a member of the public is subject to false imprisonment, that member of the public has a right to resist imprisonment so long as the method and severity of the resistance is not more than is necessary to

- 15 -

1   regain his or her liberties.[12] Medical staff cannot use attempts to resist false

2   imprisonment as cause to justify imprisonment.

3   29.10. The medical record received did not include copies of any signed documents, despite,

4   as so alleged by Plaintiff, he was forced to sign documents while physically restrained

5   and under the influence of psychotropic medications.

6   29.11. The medical record received did not include copies of the discharge instructions,

7   which the medical record claims were "printed off" and provided to Plaintiff, a claim

8   Plaintiff refutes, despite UC Regents Policy No. 9420 specifically mandates, as is

9   universal protocol, that the discharge instructions be included in the medical record.

10   30. On September 8, 2015, Plaintiff filed a request for medical records under the PAHRA and

11   public records under the CPRA. The request involved fifty-two (52) categories of documents,

12   assuming Plaintiff was detained pursuant to the Lanterman-Petris-Short Act ("LPS"),

13   codified at Welfare and Institutions Code ("WIC") Sec. 5000, et seq.

14   30.1.   The first category of records sought, if they did not exist, would violate the LPS and

15   demonstrate a failure or refusal to afford Plaintiff all statutory and regulatory rights

16   guaranteed thereunder, under the California Patients' Bill of Rights[13], and the U.S.

17   Medicare and Medicaid eligibility criteria, also deemed the "Patients' Bill of Rights":

18   30.1.1.   The right to a pre-detention evaluation to assess patient candidacy for

19   involuntary detention;[14]

20

21

_____

22   [12] Penal Code ("Pen. Code") Sec. 236: 236.  False imprisonment is the unlawful violation of the personal liberty of another.

23   California Civil Jury Instructions ("CACI"), Instr. 1400.

24   [13] 22 CCR Sec. 72527, et seq.

25   [14] WIC Sec. 5150(c): "The professional person in charge of a facility designated by the county for evaluation and treatment, member of the attending staff, or professional person designated by the county

26   shall assess the person to determine whether he or she can be properly served without being detained. If, in the judgment of the professional person in charge of the facility designated by the county for evaluation

27   and treatment, member of the attending staff, or professional person designated by the county, the person can be properly served without being detained, he or she shall be provided evaluation, crisis intervention,

28   or other inpatient or outpatient services on a voluntary basis. [...]"

Joel Jennings Warne v City and County of San Francisco, et al.

30.1.2.   The right to an evaluation by a licensed psychiatrist or psychologist once the determination to involuntarily detain a patient has been made;[15]

30.1.3.   The right to notification of a detainees rights and authorities under which he or she is being detained both orally and in writing and that such written notification shall be made part of the patients' medical record;[16]

30.1.4.   To wear his or her own clothes; to keep and use his or her own personal possessions including his or her toilet articles; and to keep and be allowed to spend a reasonable sum of his or her own money for canteen expenses and small purchases.

30.1.5.   To have access to individual storage space for his or her private use.

30.1.6.   To see visitors each day.

30.1.7.   To have reasonable access to telephones, both to make and receive confidential calls or to have such calls made for them.

30.1.8.   To have ready access to letter writing materials, including stamps, and to mail and receive unopened correspondence.

30.1.9.   To refuse convulsive treatment including, but not limited to, any electroconvulsive treatment, any treatment of the mental condition which depends on the induction of a convulsion by any means, and insulin coma treatment.

30.1.10. […]

---

[15] WIC Sec. 5150(a): "Each person admitted to a facility for 72-hour treatment and evaluation under the provisions of this article shall receive an evaluation as soon as possible after he or she is admitted and shall receive whatever treatment and care his or her condition requires for the full period that he or she is held. The person shall be released before 72 hours have elapsed only if the psychiatrist directly responsible for the person's treatment believes, as a result of the psychiatrist's personal observations, that the person no longer requires evaluation or treatment. […]"

[16] WIC Sec. 5152(i)(1): Each person admitted to a facility designated by the county for evaluation and treatment shall be given the following information by admission staff of the facility. The information shall be given orally and in writing and in a language or modality accessible to the person. […]"

WIC Sec. 5152(j): "(j) For each patient admitted for evaluation and treatment, the facility shall keep with the patient's medical record a record of the advisement given pursuant to subdivision (i) […]"

Joel Jennings Warne v City and County of San Francisco, et al.

30.1.11. To see and receive the services of a patient advocate who has no direct or indirect clinical or administrative responsibility for the person receiving mental health services.

30.1.12. Other rights, as specified by regulation.[17]

30.1.13. A right to dignity, privacy, and humane care.

30.1.14. A right to be free from harm, including unnecessary or excessive physical restraint, isolation, medication, abuse, or neglect. Medication shall not be used as punishment, for the convenience of staff, as a substitute for program, or in quantities that interfere with the treatment program.

30.1.15. A right to prompt medical care and treatment.

30.1.16. A right to religious freedom and practice.

30.1.17. A right to participate in appropriate programs of publicly supported education.

30.1.18. A right to social interaction and participation in community activities.

30.1.19. A right to physical exercise and recreational opportunities.

30.1.20. A right to be free from hazardous procedures.[18]

30.1.21. A right to refuse psychotropic medications[19]

30.1.22. To be fully informed, as evidenced by the patients written acknowledgment prior to or at the time of admission and during stay, or these rights and of all rules and regulations governing patient conduct.

30.1.23. [...]

30.1.24. To be fully informed by a physician of his or her total health status, and to be afforded the opportunity to participate on an immediate and on going basis in the total plan of care, including the identification of medical, nursing and psychosocial needs and the planning of related services.

---

[17] WIC Sec. 5325(a) through (i)

[18] WIC Sec. 5325.1(a) through (i)

[19] WIC Sec. 5325.2

30.1.25. To consent to or to refuse any treatment or procedure or participation in experimental research.

30.1.26. To receive all information that is material to an individual patient's decision concerning whether to accept or refuse any proposed treatment or procedure. The disclosure of material information for administration of psychotherapeutic drugs or physical restraints or the prolonged use of a device that may lead to the inability to regain use of a normal bodily function shall include the disclosure of information listed in Section 72528(b).

30.1.27. [...]

30.1.28. To be encouraged and assisted throughout the period of stay to exercise rights as a patient and as a citizen, and to this end to voice grievances and recommend changes in policies and services to Facility staff and/or outside representatives of the patient's choice, free from restraint, interference, coercion, discrimination or reprisal.

30.1.29. [...]

30.1.30. To be free from mental and physical abuse.

30.1.31. [...]

30.1.32. To be treated with consideration, respect and full recognition of dignity and individuality, including privacy in treatment and in care of personal needs.

30.1.33. [...]

30.1.34. To associate and communicate privately with persons of the patient's choice, and to send and receive personal mail unopened.

30.1.35. [...]

30.1.36. To have reasonable access to telephones and to make and receive confidential calls.

30.1.37. [...]

30.1.38. To be free from psychotherapeutic drugs and physical restraints used for the purpose of patient discipline or staff convenience and to be free from

- 19 -

psychotherapeutic drugs used as a chemical restraint as defined in Section 72018, except in an emergency which threatens to bring immediate injury to the patient or others. If a chemical restraint is administered during an emergency, such medication shall be only that which is required to treat the emergency condition and shall be provided in ways that are least restrictive of the personal liberty of the patient and used only for a specified and limited period of time.

30.1.39. The right to be informed of the patient's rights, in advance of furnishing or discontinuing patient care whenever possible.

30.1.40. The right to file grievances and to receive a prompt resolution thereto.

30.1.41. [...]

30.1.42. The right to personal privacy.

30.1.43. The right to receive care in a safe setting.

30.1.44. The right to be free from all forms of abuse or harassment.

30.1.45. [...]

30.1.46. The right to access information contained in his or her clinical records within a reasonable time frame. The hospital must not frustrate the legitimate efforts of individuals to gain access to their own medical records and must actively seek to meet these requests as quickly as its record keeping system permits.

30.1.47. The right to be free from physical or mental abuse, and corporal punishment; the right to be free from restraint or seclusion, of any form, imposed as a means of coercion, discipline, convenience, or retaliation by staff. [...]

30.1.48. The right to be free from restraint or seclusion, which is not the least invasive means of restraint possible [to avoid severe bodily injury].[20]

30.2. The second category of record sought consisted of signed documentation, and/or any other signed documents, which Respondents believe to qualify as or constitute

---

[20] 42 Code of Federal Regulations ("CFR") Part 482.13, in relevant part.

- 20 -

Joel Jennings Warne v City and County of San Francisco, et al.

1    voluntary consent to detention,[21] voluntary consent to treatment, and any and all other

2    documents upon which Respondents believe to have obtained Plaintiff's signature

3    freely and without coercion, duress, or use of force.

4    30.3.   The third category of records sought consisted of those documents that identify the

5    legal authorities, be they statutory or regulatory, under which the Plaintiff was lawfully

6    detained at SFGH between August 8-9, 2015..[22]

7    30.4.   The fourth category of records sought consisted of video surveillance footage from the

8    public hallway in which Plaintiff was kept during nearly the entirety of his videos

9    during which Plaintiff was conscious and any and all "sound recordings and/or other

10   electronic media [pertaining to him, his medical or psychological status, or the cause

11   for his detention] created during the course of his admission, including photographic

12   or still-frame records.

13   30.5.   The fifth category of records sought consisted of information related to responding

14   Sheriff's deputies to Dr. Tenner's "code 415" call and whom assisted with Plaintiff's

15   detention, e.g. names, ranks, badge numbers, incident reports, etc.

16   30.6.   On October 13, 2015, SFDPH responded declining to provide nearly every record,

17   with the exception that they did provide 5150 involuntary psychiatric forms, consent

18   to voluntary treatment under the LPS forms, etc., all of which were unmarked

19   exemplars that were not completed for Plaintiff. Instead, in their narrative response to

20   the specific requests, SFDPH conceded that Plaintiff was not a candidate for a LPS

---

25   [21] WIC Sec. 5326.2-5326.5 (Generally, voluntary detention under the LPS must include a signed consent

26   to treatment, notification of rights, and notification of the right to revoke consent. No such consent was
     obtained in Plaintiff's case by admission of the SFDPH.)

27   [22] Pen. Code Sec. 841 states: "False imprisonment is the unlawful violation of the personal

28   liberty of another." That is to say that, absent a lawful cause, a case for false imprisonment has been
     properly made before the Court.

- 21 -

Joel Jennings Warne v City and County of San Francisco, et al.

1    involuntary psychiatric hold and, therefore, they have no records to produce based on

2    such a hold.[23]

3

4    31. With respect to SFDPH's response to Plaintiff's request for the video surveillance footage

5    from SFGH during his detention, the response to which is cited solely for the circumstantial

6    value, if any, was that the video surveillance footage was a "law enforcement" and "security"

7    record, and therefore not a public record. On October 19, 2015, SFDPH "clarified" that the

8    video surveillance footage was protected under HIPAA[24] and the Confidentiality of Medical

9    Information Act.[25]

10   32. On September 18, 2015, at the expiration of their ten-day period to respond to Plaintiff's

11   September 8, 2015, request for patient and public records[26], Plaintiff filed a complaint with

12   the Sunshine Ordinance Task Force of the CCSF.[27] A hearing was subsequently scheduled for

13   November 17, 2015 before the Sunshine Ordinance Task Force's Complaints Committee. The

14   Sheriff's Department, via their Chief Counsel Freya Horne, appeared as directed by the

15   Sunshine Ordinance Task Force after providing, what she alleges, is all responsive records,

16   absent the video surveillance footage. The SFDPH failed to send a representative as directed.

---

17   [23] To date, Defendants have refused to identify the laws, rules, and regulations that justify Plaintiff's

18   detention at SFGH between August 8-9, 2015. In reply to an unrelated Petition for Writ of Mandamus,
     filed on July 7, 2016 by Plaintiff, which is not incorporated into this action, Respondents appear to argue

19   that since the detention was not under the LPS, and since Plaintiff does not know and does not have the
     means to know the laws, rules, or regulations under which Defendants contend that the detention was

20   justified, that they are not required to provide Plaintiff with that justification. In essence, Plaintiff has no
     right to know the justification for his detention at SFGH between 8-9, 2015, and therefore, has no rights at

21   all with respect thereto.

22   [24] 42 United States Code ("U.S.C"). § 300gg; 29 U.S.C § 1181 et seq; and 42 USC 1320d et seq.

23   [25] Civil Code ("Civ. Code") 56, et seq.

24   [26] Govt Code 6253(c)

25   [27] The Sunshine Ordinance of the CCSF, codified at Administrative Code ("Admin Code") 67, et seq.,
     provides for expanded access to records, in most cases, above and beyond the limits and restrictions

26   imposed by the state CPRA law. In addition, the Sunshine Ordinance allows for a requestor of public
     records that are in the custody of a political subdivision or subordinate public agency of the CCSF, which

27   the requestor believes to have been unlawfully withheld, to petition the Sunshine Ordinance Task Force to
     hear the requestor's arguments for disclosure, the agency's arguments for non-disclosure, and to render a

28   decision denying the request or ordering its disclosure within forty-five (45) days of receipt of the
     requestor's petition.

Joel Jennings Warne v City and County of San Francisco, et al.

1    33. The matters were continued until the February 6, 2016, hearing before the full membership of

2         the Sunshine Ordinance Task Force[28]

3    34. Thereafter, on a date unknown to Plaintiff, Defendants DOES 1-1,000, each of whom is

4         known to be an elected, appointed, employed or other agent of Defendant CCSF, maliciously

5         published his full, unredacted, and unaltered medical record, despite admittedly containing

6         "inaccurate" and generally defamatory statements and claims about Plaintiff. The publication

7         of Plaintiff's medical record was intended to reprise against him, as well as discourage

8         further attempts to obtain, amongst other things, a copy of the video surveillance footage

9         from SFGH between August 8-9, 2015, captured during Plaintiff's admission.

10

11                    **IV. GENERAL CITATION SUPPORTING CAUSES OF ACTION**

12

13   35. The "5150/5585 Involuntary Detention Manual," published by the San Francisco Department

14        of Public Health, which administers the SFGH, and which is dated February 2015,[29] states:

15              [...]

16

17              *People with psychiatric disabilities who are hospitalized involuntarily- - and are*
              *often in need of mental health care, medical treatment, and other services- - face*
18              *a significant curtailment of their basic human rights. Consequently, in the*
              *California cases evaluating the potential for rights deprivations, the courts have*
19              *repeatedly affirmed the Legislature's intent that the rights of involuntarily*
              *detained persons with psychiatric disabilities be protected by the LPS Act (e.g.,*
20              *Keyea v. Rushen 178 Cal. App. 3d at p. 534, 228. Cal. Rpt 746). The LPS Act*
              *expressly guarantees a number of legal and civil rights and provides that*
21              *involuntarily detained mental health clients retain all rights not specifically*
              *denied under the statutory scheme (Welfare & Institutions Code, Sections 5325.1*
22              *& 5327).*

23

24   _____

25   [28] References to any assertions of failure or refusal to provide documents in compliance with the
     requirements of the CPRA or any other statutory authority are incorporated solely for their circumstantial
26   value to the case, if any. The alleged failures or refusals to comply are not, themselves, intended for
     litigation in this matter.

27   [29] https://www.sfdph.org/dph/files/CBHSdocs/InvoluntaryDetentionManual-022015.pdf, retrieved on
     September 23, 2016, at pp. 4-7, incorporated into the complaint in part, as excerpted herein, and which
28   shall be entered into evidence in its entirety at a forthcoming date.

Joel Jennings Warne v City and County of San Francisco, et al.

[...]

*According to [WIC] Section 5001 (W&I Section 5001), all provisions of the LPS Act are to be interpreted to promote the following legislative purposes:*

*a. To end the inappropriate, indefinite and involuntary commitment of persons with mental health disorders, developmental disabilities, and chronic alcoholism, and to eliminate legal disabilities.*

*b. To provide prompt evaluation and treatment of persons with mental health disorders or impaired by chronic alcoholism.*

*c. To guarantee and protect public safety.*

*d. To safeguard individual rights through judicial review.*

*e. To provide individualized treatment, supervision and placement services by a conservatorship program for persons who are gravely disabled.*

*f. To encourage the full use of all existing agencies, professional personnel, and public funds to accomplish these objectives and to prevent duplication of services and unnecessary expenditures.*
*g. To protect persons with mental health disorders and developmental disabilities from criminal acts.*

*h. To provide consistent standards for protection of the personal rights of persons receiving services under this part and under Part 1.5 (commencing with Section 5585).*

*i. To provide services in the least restrictive setting appropriate to the needs of each person receiving services under this part and under Part 1.5 (commencing with Section 5585).*

[...]

*The more intrusive and fundamental the right, the more stringent the due process standards for protection of that right under the LPS Act. So strong is the statutory protection of certain rights that a number of rights under the LPS Act cannot be denied under any circumstances. An example of these "undeniable rights" is codified in [WIC] Section 5325.1 and includes:*

• *A right to dignity, privacy, and humane care.*

• *A right to be free from harm, including unnecessary or excessive physical restraint, isolation, medication, abuse, or neglect. Medication shall not be used as punishment, for the convenience of staff, as a substitute for program, or in quantities that interfere with the treatment program.*

• *A right to prompt medical care and treatment.*

• *A right to participate in appropriate programs of publicly supported education.*

• *A right to social interaction and participation in community activities.*

• *A right to physical exercise and recreational opportunities.*

• *A right to be free from hazardous procedures.*

*Noteworthy is the fact that physical restraint used for punishment or for other improper purposes or periods of time beyond which the time it was ordered constitutes abuse and must be reported to protective service agencies ([WIC] Section 15610.63(f)(1)(2)(3)). In some circumstances, such abuses can subject professionals to criminal sanctions.*

*[...]*

*A patient with a psychiatric disability must be provided with all essential information required to make an informed decision whether or not to accept a treatment recommended by a physician ([WIC] Section 5152). Under LPS, an individual must be given written and oral information about medications they are being prescribed as a result of their mental health disorder and this information must include:*

• *the probable effects and possible side effects of medications;*

• *the nature of the mental illness, or behavior, that is the reason the medication is being given or recommended;*

• *the likelihood of improving or not improving without the medication;*

• *reasonable alternative treatments available;*

• *the name and type, frequency, amount, and method of dispensing the medications, and the probable length of time that the medications will be taken;*

- 25 -

Joel Jennings Warne v City and County of San Francisco, et al.

and

• *the fact that the above information has or has not been given shall be indicated in the individual's record.*

[...]

*Antipsychotic medication may be administered if that person does not refuse that medication following disclosure of the right to refuse medication as well as the information outlined above ([WIC] Section 5332). Antipsychotic medication refers to any drug customarily used for the treatment of symptoms of psychosis and other severe mental and emotional disorders. If any person orally refuses or gives other indication of refusal of treatment with that medication, the medication shall only be administered:*

• *upon a determination of that person's incapacity to refuse the treatment in a hearing held for that purpose; or*

• *in case of an emergency defined as a situation in which action to impose treatment over the person's objection is immediately necessary for preservation of life or the prevention of serious bodily harm to the person or to others and it is impracticable to first gain consent ([WIC] Section 5008(m)). In the event of an emergency, only medication required to treat the emergency may be administered and the medication shall be provided in the manner least restrictive to the personal liberty of the individual.*

[...]

*In 1991, the California legislature enacted Senate Bill 665 (SB 665), mandating informed consent, and capacity hearings procedures to implement Riese v St. Mary's Hospital and Medical Center. Riese was the 1987 judicial decision recognizing that persons detained pursuant to LPS have a right to give or refuse consent to medication prescribed for treatment. At the core of the Riese decision is the recognition that mental health patients may not be presumed to be incompetent solely because of their involuntary hospitalization ([WIC] Sections 5326.5 & 5331).*

*The reason why the prescriber/Plaintiff bears the burden of proving the refuser's incapacity to refuse medications by clear and convincing evidence in a statutorily defined hearing for that purpose is the intrusiveness and fundamental nature of the right at stake. The court observed that treatment with antipsychotic drugs not only affects the patient's bodily integrity, but also the patient's mind, the "quintessential zone of privacy." To assess capacity, the Riese court stated the*

- 26 -

1  *decision maker should focus on whether the patient is:*

2  *1) aware of his or her situation (e.g.,diagnosis/condition);*

3  *2) able to understand the benefits and risks of and alternatives to the medication;*
4  *and*

5  *3) able to understand and evaluate the medication information and participate in*
6  *the treatment decision through a rational thought process.*

7  *The court stated that it should be assumed that a patient is using rational thought*
8  *processes unless a clear connection between the patient's delusional or*
   *hallucinatory perceptions and the patient's decision can be shown. In addition,*
9  *the court held that even where there were irrational fears about the treatment, the*
   *presence of some rational reasons for refusal of the treatment was enough to*
10 *surmise that the patient had capacity to make treatment decisions. The court*
11 *concluded that the evidence showed a disagreement between the physician and*
   *the patient, but such a disagreement did not show that the patient lacked capacity*
12 *(Conservatorship of Waltz 180 Cal. App. 3d 722,227 Cal. Rptr. 436, 1986).*

13 [...]
14

15 **V. IMMUNITY UNDER WIC SEC. 5278 IS NOT APPLICABLE**

16

17      Individuals authorized to take members of the public into custody pursuant to the LPS are

18 generally immune from civil action pursuant to WIC Sec. 5278. In the present case, Respondent

19 CITY AND COUNTY OF SAN FRANCISCO is on record, stating that, while Plaintiff was

20 detained, the detention was not pursuant to a 5150 involuntary psychiatric hold. The same

21 Respondent has affirmed, by lacking the requisite signed consents prescribed by statute, that the

22 detention was not effectuated pursuant to the LPS at all—either voluntary or involuntary.

23 Because, to the extent of Plaintiff's knowledge there are no other or separate laws that allow for

24 the involuntary detention of a member of the public for purported psychological cause, these

25 causes of action, in whole or in part, assume that the LPS applied, that the obligations created

26 and rights afforded were violated by Respondents, and that, by virtue of their denial that the

27 detention was effectuated pursuant to the LPS, Respondents have waived their immunity under

28 the aforementioned section of law.

Joel Jennings Warne v City and County of San Francisco, et al.

# V. CAUSES OF ACTION

## FIRST CAUSE OF ACTION FOR NEGLIGENCE

36. Plaintiff realleges all facts and allegations in previous paragraphs and subparagraphs as though fully incorporated herein.

37. Plaintiff alleges that Dr. Andrea Tenner, the UC Regents, and/or the CCSF were generally negligent in the handling of Plaintiff during his admission to SFGH, and subsequent detention, during August 8-9, 2015, under Civ. Code 1714(a).

## SECOND CAUSE OF ACTION FOR MEDICAL NEGLIGENCE

38. Plaintiff realleges all facts and allegations in previous paragraphs and subparagraphs as though fully incorporated herein.

39. Plaintiff alleges that Dr. Andrea Tenner engaged in activities that constitute medical negligence by deviating from the basic standards of care during Plaintiff's August 8-9, 2015, admission and detention at SFGH, under Civ. Proc. Code Sec. 340.5, Civ. Code 3333.1, and Civ. Code 3333.2.

40. In the context of this cause of action, Dr. Tenner is sued, generally, as healthcare provider and, additionally, as a medical specialist (emergency medicine).

41. Specific allegations include, but are not limited to:

    41.1.  The failure or refusal to use the level of skill, knowledge, and care in diagnosis and treatment that other reasonably careful providers would use.

    41.2.  The failure or refusal to afford to Plaintiff the rights, and required notification thereof, guaranteed to him under state and federal laws, rules, and regulations:

        41.2.1.  The failure to afford to Plaintiff the rights, and notifications thereof, guaranteed to him under the LPS and 9 C.C.R. 800-868.

- 28 -

Joel Jennings Warne v City and County of San Francisco, et al.

41.2.2.  The failure or refusal to afford to Plaintiff the rights and notifications thereof guaranteed to him under the Patient's Bill of Rights of the State of California.[30]

41.2.3.  The failure or refusal to afford to Plaintiff the rights and notifications thereof guaranteed to him under 42 C.F.R., Part 482.13.

41.2.4.  The failure or refusal to afford to Plaintiff the rights and notifications thereof guaranteed to him under the 42 U.S.C. Sec. 9501, "Bill of Rights."

41.3.  The failure or refusal to accept their duties to warn the Plaintiff that his conduct, if even defensibly dangerous, as sufficient to deprive him of his rights as described above, could cause injury to himself or others or would lead to the deprivation of his rights.

41.4.  The failure or refusal to refer Plaintiff to a specialist, inclusive of:

41.4.1.  Licensed cardiologist

41.4.2.  Licensed psychiatrist

41.5.  Engaging in conduct amounting to medical battery, in that the Plaintiff was admitted for the possible unwitting ingestion of a narcotic sedative, and the Respondent engaged in unnecessary treatment for symptoms for which Plaintiff denies experiencing but for which he was treated and for failing to treat symptoms Plaintiff admits experiencing but for which he was untreated.

41.6.  Failure or refusal to acquire informed consent of Plaintiff prior to treatment.

41.7.  Failure or refusal to acquire consent to administer psychotropic medications to Plaintiff.

41.8.  Failure or refusal to seek a competence order to overcome Plaintiff's objections to remaining in-patient and to the administration of psychotropic medications.

41.9.  Failure or refusal to provide Plaintiff with medical information as it was discovered or became available and/or misrepresenting medical information in order to deceive Plaintiff as to his medical condition.

41.10. Refusal of Plaintiff's statutory right to use of telephones to make confidential calls.

[30] 22 CCR Sec. 72527, et seq.

- 29 -

Joel Jennings Warne v City and County of San Francisco, et al.

1    41.11. Refusal of Plaintiff's statutory right to exercise.

2    41.12. Refusal of Plaintiff's statutory right to withdraw consent to admission (to the extent

3        consent ever existed).

4    41.13. Using force, threat of force, and other forms of coercion in attempts to gain consent to

5        treatment.

6    41.14. Using both chemical and physical restraint without having established, assuming for

7        the sake of argument the accuracy of the medical record produced, that physical

8        restraint alone would not have been sufficient to prevent injury to patient or others.

9    41.15. Failing to meet any and/or all other obligations created and rights afforded by the LPS.

10       (WIC Sec. 5325, *generally*; 9 C.C.R., Chapter 4, *generally*; 22 CCR Sec. 72527, et

11       seq., *generally*; and the 42 CFR Part 482.13.)

12

13           **THIRD CAUSE OF ACTION FOR MEDICAL NEGLIGENCE**

14

15   42. Plaintiff realleges all facts and allegations in previous paragraphs and subparagraphs as

16       though fully incorporated herein.

17   43. Plaintiff alleges that the CCSF and the UC Regents were medically negligent under Civ.

18       Proc. Code Sec. 340.5, Civ. Code 3333.1, and Civ. Code 3333.2.

19   44. Specific allegations include:

20   44.1.  Not using reasonable care toward Plaintiff and not providing procedures, policies,

21        facilities, supplies, and qualified personnel reasonable necessary for the treatment of

22        Plaintiff, given his condition as alleged in medical records.

23   44.2.  Not using reasonable care to select and periodically evaluate its medical staff so that

24        its patients are provided adequate medical care.

25

26         **FOURTH CAUSE OF ACTION FOR PROFESSIONAL NEGLIGENCE**

27

28

- 30 -

Joel Jennings Warne v City and County of San Francisco, et al.

1  45. Plaintiff realleges all facts and allegations in previous paragraphs and subparagraphs as

2      though fully incorporated herein.

3  46. Plaintiff alleges that Dr. Tenner was professionally negligent for failing or refusing to use

4      such skill, prudence, and diligence as other members of her profession commonly possess

5      and exercise; that she breached that duty; that she improperly exercised the proper "standard

6      of care" during Plaintiff's admission to SFGH during August 8-9, 2015, and subsequent

7      detention; and failed or refused to provide Plaintiff with medical information as it was

8      discovered or became available and/or misrepresenting medical information in order to

9      deceive Plaintiff.

10

11            **FIFTH CAUSE OF ACTION FOR BATTERY**

12

13  47. Plaintiff realleges all facts and allegations in previous paragraphs and subparagraphs as

14      though fully incorporated herein.

15  48. Plaintiff alleges that Dr. Tenner and, in whole or in part, DOES 1-1,000, engaged in battery

16      against Plaintiff by touching him, with or without the intent to harm him, without consent or

17      medically necessary cause.

18

19            **SIXTH CAUSE OF ACTION FOR ASSAULT**

20

21  49. Plaintiff realleges all facts and allegations in previous paragraphs and subparagraphs as

22      though fully incorporated herein.

23  50. Plaintiff alleges that Dr. Tenner and, in whole or in part, DOES 1-1,000, engaged in acts of

24      assault against Plaintiff.

25  51. Specific allegations include:

26      51.1.  The unnecessary, violent, and forcible push of Plaintiff's gurney, so as to force him to

27             jump to his knees so he could land on his feet should the gurney hit someone,

28             something, or otherwise tip over.

- 31 -

Joel Jennings Warne v City and County of San Francisco, et al.

51.2.   Forcibly, and without consent or medical necessity, binding Plaintiff's hands and feet.

51.3.   Forcibly, and without consent or medical necessity, injecting Plaintiff with psychotropic medications.

### SEVENTH CAUSE OF ACTION FOR FALSE IMPRISONMENT

52. Plaintiff realleges all facts and allegations in previous paragraphs and subparagraphs as though fully incorporated herein.

53. Plaintiff alleges that Dr. Tenner and, in whole or in part, DOES 1-1,000, falsely imprisoned Plaintiff without justification, consent, or a condition of medical necessity, and to this day, has denied to Plaintiff such justification.

54. Plaintiff alleges that the CCSF and/or UCSF, inclusive of any of their political subdivisions, subordinate public agencies, employees, or other associated persons, including, in whole or in part, DOES 1-1,000, conspired with Dr. Tenner to create a false pretense for the imprisonment and created fictional medical records that were contrived to sell a narrative intended to do nothing more than compromise Plaintiff's credible should a complaint, such as the present complaint, be filed against Defendants.

### EIGHTH CAUSE OF ACTION FOR KNOWINGLY MAKING FALSE STATEMENTS ON A PATIENT RECORD AND/OR DEFAMATION

55. Plaintiff realleges all facts and allegations in previous paragraphs and subparagraphs as though fully incorporated herein.

56. The aforementioned "5150/5585 Involuntary Detention Manual," states, in relevant part:

*LIABILITY FOR FALSE STATEMENT*

*Any person who intentionally gives a false statement for purposes of detaining an individual shall be liable in a civil action.*

- 32 -

Joel Jennings Warne v City and County of San Francisco, et al.

57. Plaintiff alleges that Dr. Tenner, and, in whole or in part, DOES 1-1,000, made false statements in Plaintiff's medical record in order to attempt to justify his detention—despite their admission their Plaintiff was not a candidate for an involuntary psychiatric hold pursuant to WIC Sec. 5150, et seq.—and that such statements constitute a violation of, *inter alia*, Cal. Pen. Code 471.5, defamation for cause of libel under Cal. Civ. Code Sec. 44, et seq., etc.

58. Plaintiff alleges that Dr. Tenner, and, in whole or in part, DOES 1-1,000, made false statements in Plaintiff's medical record specifically to undermine his credibility as a witness in expectation of litigation, that the medical record was distributed to others, and that these false statements caused economic and emotional harm to Plaintiff and compromised his reputation and character, affected his ability to acquire gainful employment, and caused other forms of injury.

59. Plaintiff alleges that, since under California statutes, medical records may be petitioned for correction by appendix thereto, the medical records themselves can never be destroyed or altered in content, the medical records created will always contain admittedly "inaccurate" and generally defamatory statements and claims and that such statements and claims will follow Plaintiff for the rest of his life (HSC Sec. 12311(a)); therefore, a case of defamation has been made out and, in so far as recognition of that fact is incorporated into the CCSF's aforementioned "5150/5585 Involuntary Detention Training Manual," the CCSF concedes as to that argument.

**NINTH CAUSE OF ACTION FOR VIOLATION OF PLAINTIFF'S RIGHTS UNDER THE 4TH AMENDMENT OF THE U.S. CONSTITUTION - PURSUANT TO 42 U.S.C. SEC. 1983**

60. Plaintiff realleges all facts and allegations in previous paragraphs and subparagraphs as though fully incorporated herein.

- 33 -

Joel Jennings Warne v City and County of San Francisco, et al.

61. Plaintiff alleges that Dr. Tenner and, in whole or in part, DOES 1-1,000, violated Plaintiff's rights under the 4th Amendment of the U.S. Constitution by depriving Plaintiff of his guaranteed right to security in his person from unlawful seizure by detaining him with neither probable cause nor statutory authority to do so.

**TENTH CAUSE OF ACTION FOR VIOLATION OF PLAINTIFF'S RIGHTS UNDER THE 5TH AND/OR 14TH AMENDMENTS OF THE U.S. CONSTITUTION TO DUE PROCESS OF LAW - PURSUANT TO 42 U.S.C. SEC. 1983**

62. Plaintiff realleges all facts and allegations in previous paragraphs and subparagraphs as though fully incorporated herein.

63. Plaintiff alleges that Dr. Tenner and, in whole or in part, DOES 1-1,000, violated Plaintiff's rights under the 5th and/or 14th Amendment of the U.S. Constitution by depriving Plaintiff of his due process rights and by depriving him of his civil liberties by detaining him for alleged psychiatric cause without meeting the requirements created and afforded to Plaintiff the rights guaranteed by the LPS, including but not limited to, seeking an evaluation by a licensed psychiatrist as is required under any involuntary psychiatric hold (WIC Sec. 5152, et seq.) and/or failing to seek a competence order directing Plaintiff to remain in the SFGH's custody based on a probable cause determination that Plaintiff was unable to make admission and discharge decisions.

64. Plaintiff alleges that Dr. Tenner and, in whole or in part, DOES 1-1,000, violated Plaintiff's rights under the 14th Amendment of the U.S. Constitution by depriving Plaintiff of his due process rights and depriving Plaintiff of his civil liberties by administering psychotropic drugs without consent, in the absence of a competence order issued pursuant to a hearing held for that purpose, and without the concurrence of a licensed psychiatrist (as required under WIC Sec. 5152, et seq.)

- 34 -

Joel Jennings Warne v City and County of San Francisco, et al.

1

## ELEVENTH CAUSE OF ACTION FOR INTENTIONAL INFLICTION OF

2

## EMOTIONAL DISTRESS

3

4   65. Plaintiff realleges all facts and allegations in previous paragraphs and subparagraphs as

5       though fully incorporated herein.

6   66. Plaintiff alleges that Dr. Tenner and, in whole or in part, DOES 1-1,000, engaged in

7       outrageous conduct with the intention to cause, or exhibited reckless disregard of the

8       probability of causing, emotional distress, that this conduct caused severe emotional suffering

9       and that there is a causal nexus between that conduct and the severe emotional suffering.

10

11  ## TWELFTH CAUSE OF ACTION AGAINST THE REGENTS OF THE UNIVERSITY OF

12  ## CALIFORNIA SYSTEM AND THE CITY AND COUNTY OF SAN FRANCISCO UNDER

13  ## THE DOCTRINE OF VICARIOUS LIABILITY FOR EACH PRECEDING CAUSE OF

14  ## ACTION

15

16  67. Plaintiff realleges all facts and allegations in previous paragraphs and subparagraphs as

17      though fully incorporated herein.

18  68. Plaintiff alleges that Dr. Tenner and, in whole or in part, DOES 1-1,000, in so far as they are

19      either employed by the UC Regents or the CCSF, and/or any of their political subdivisions,

20      and because the SFGH is owned and administered by the CCSF and because, by way of

21      contract, the UC Regents provides medical personnel services to the SFGH, were acting as

22      agents of both the UC Regents and the CCSF.

23  69. Plaintiff alleges that, under the doctrine of vicarious liability (or 'Respondeat Superior')

24      negligence by an agent of the UC Regents and/or the CCSF also constitutes negligence by

25      the UC Regents and/or the CCSF, who ultimately share in liability for the negligence of their

26      agents.

27

28

Joel Jennings Warne v City and County of San Francisco, et al.

1    70. For each of the preceding causes of action, Plaintiff alleges that the UC Regents and the

2    CCSF mutually share in liability in proportions decided by jury verdict or whichever method

3    the Court deems appropriate.

4

5    **THIRTEENTH CAUSE OF ACTION FOR BATTERY**

6

7    71. Plaintiff realleges all facts and allegations in previous paragraphs and subparagraphs as

8    though fully incorporated herein.

9    72. Plaintiff alleges that the responding Sheriff's Deputies, employed or otherwise contracted

10    with the CCSF, and, in whole or in part, DOES 1-1,000, engaged in battery against Plaintiff

11    by touching him, with or without the intent to harm him, without consent or medically

12    necessary cause.

13

14    **FOURTEENTH CAUSE OF ACTION FOR ASSAULT**

15

16    73. Plaintiff realleges all facts and allegations in previous paragraphs and subparagraphs as

17    though fully incorporated herein.

18    74. Plaintiff alleges that the responding Sheriff's Deputies, employed or otherwise contracted

19    with the CCSF, and, in whole or in part, DOES 1-1,000, engaged in conduct that amounted to

20    assault.

21    75. Specific allegations include:

22        75.1.  Forcibly, and without first questioning Plaintiff or otherwise establishing whether

23           Plaintiff was lawfully required to remain at SFGH, holding Plaintiff down on the

24           gurney while medical staff, and, in whole or in part, DOES 1-1,000, bound Plaintiff's

25           hands and feet, injected him with psychotropic drugs.

26        75.2.  Failing or refusing to perform requisite questioning and investigation, prior to

27           detention and/or assistance with detention, necessary to establish probable cause that

28

- 36 -

Joel Jennings Warne v City and County of San Francisco, et al.

Plaintiff was a candidate for an involuntary psychiatric hold, and as a result, touching

Plaintiff without consent or probable cause (WIC Sec. 5150.05.)

## FIFTEENTH CAUSE OF ACTION FOR FALSE IMPRISONMENT

76. Plaintiff realleges all facts and allegations in previous paragraphs and subparagraphs as though fully incorporated herein.

77. Plaintiff alleges that the responding Sheriff's deputies, and, in whole or in part, DOES 1-1,000, falsely imprisoned Plaintiff without justification, consent, or a condition of medical necessity, and to this day, have denied Plaintiff such justification. And that a case for false imprisonment has been made out in that they:

77.1.  Failed or refused to perform requisite questioning and investigation, prior to detention and/or assistance with detention, necessary to establish probable cause that Plaintiff was a candidate for an involuntary psychiatric hold or that he had a legal duty to remain at the SFGH against his will, and as a result, causing him to be imprisoned without lawful cause. (WIC Sec. 5150.05 & Cal. Pen. Code 236.)

## SIXTEENTH CAUSE OF ACTION FOR VIOLATION OF PLAINTIFF'S RIGHTS UNDER THE 4TH AMENDMENT OF THE U.S. CONSTITUTION - PURSUANT TO 42 U.S.C. SEC. 1983

78. Plaintiff realleges all facts and allegations in previous paragraphs and subparagraphs as though fully incorporated herein.

79. Plaintiff alleges that responding SFSD deputies and, in whole or in part, DOES 1-1,000, violated Plaintiff's rights under the 4th Amendment of the U.S. Constitution by depriving Plaintiff of his guaranteed right to security in his person and freedom from unlawful seizure by detaining him with neither probable cause nor statutory authority to do so, and because the nature of the detention, use of restraints, and the length of the detention constituted a *de facto*

- 37 -

arrest, without probable cause or an arrest warrant, in which case, Plaintiff had a right, which

was denied, to due process, including the right to counsel, a request made by Plaintiff, as

admitted to by Respondents, but was also denied nonetheless.

**SEVENTEENTH CAUSE OF ACTION FOR FIOR VIOLATION OF PLAINTIFF'S**

**RIGHTS UNDER THE 6TH AMENDMENT OF THE U.S. CONSTITUTION -**

**PURSUANT TO 43 U.S.C. SEC. 1983**

80. Plaintiff realleges all facts and allegations in previous paragraphs and subparagraphs as
   though fully incorporated herein.

81. Plaintiff alleges that responding SFSD deputies and, in whole or in part, DOES 1-1,000,
   violated Plaintiff's rights under the 6th Amendment to the U.S. Constitution in that
   responding SFSD deputies, each of whom are alleged to be 'peace officers' of the State of
   California, used sufficient force and restraint to constitute a *de facto* arrest, while refusing
   Plaintiff access to legal counsel upon his request.

**EIGHTEENTH CAUSE OF ACTION FOR FIOR VIOLATION OF PLAINTIFF'S**

**RIGHTS UNDER THE 5TH AND/OR 14TH AMENDMENTS OF THE U.S.**

**CONSTITUTION TO DUE PROCESS OF LAW - PURSUANT TO 43 U.S.C. SEC. 1983**

82. Plaintiff realleges all facts and allegations in previous paragraphs and subparagraphs as
   though fully incorporated herein.

83. Plaintiff alleges that responding SFSD deputies and, in whole or in part, DOES 1-1,000,
   violated Plaintiff's rights under the  5th and/or 14th Amendments of the U.S. Constitution by
   depriving Plaintiff of his due process rights and depriving him of his civil liberties by
   detaining him without probable cause, a statutory authority for detaining him, or a
   competence or other order directing Plaintiff to remain in the custody of the SFGH (or
   SFSD) against his will.

- 38 -

Joel Jennings Warne v City and County of San Francisco, et al.

84. Plaintiff alleges that responding SFSD deputies and, in whole or in part, DOES 1-1,000, violated Plaintiff's rights under the 5th and/or 14th Amendment of the U.S. Constitution by depriving Plaintiff of his due process rights and depriving Plaintiff of his civil liberties by overseeing the administration of psychotropic drugs, without consent, in the absence of a competence order issued pursuant to a hearing held for that purpose, and without the concurrence of a licensed psychiatrist (as required under WIC Sec. 5152, et seq.), and while in the SFSD's custody.

### NINETEENTH CAUSE OF ACTION FOR THE INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

85. Plaintiff realleges all facts and allegations in previous paragraphs and subparagraphs as though fully incorporated herein.

86. Plaintiff alleges that the responding SFSD deputies and, in whole or in part, DOES 1-1,000, engaged in outrageous conduct with the intention to cause, or exhibited reckless disregard of the probability of causing, emotional distress, that this conduct caused severe emotional suffering and that there is a causal nexus between that conduct and the severe emotional suffering.

### TWENTIETH CAUSE OF ACTION AGAINST THE CITY AND COUNTY OF SAN FRANCISCO UNDER THE DOCTRINE OF VICARIOUS LIABILITY FOR CAUSES OF ACTION THIRTEEN THROUGH NINETEEN

87. Plaintiff realleges all facts and allegations in previous paragraphs and subparagraphs as though fully incorporated herein.

88. Plaintiff alleges that responding SFSD deputies and, in whole or in part, DOES 1-1,000, in so far as they are employed by the CCSF, and/or any of their political subdivisions, were acting as agents of the CCSF.

- 39 -

Joel Jennings Warne v City and County of San Francisco, et al.

89. Plaintiff alleges that, under the doctrine of vicarious liability (or 'Respondeat Superior') negligence by an agent of the the CCSF also constitutes negligence by the CCSF; therefore, the CCSF is liable for causes of action thirteen through nineteen.

## TWENTY-FIRST CAUSE OF ACTION FOR BATTERY

90. Plaintiff realleges all facts and allegations in previous paragraphs and subparagraphs as though fully incorporated herein.

91. Plaintiff alleges that SFPD Officer Steven Gomez (Badge No. 2317) engaged in battery against Plaintiff by touching him, with or without the intent to harm him, without consent, when on August 31, 2015, Ofc. Gomez responded to Plaintiff's apartment and unnecessarily placed him in handcuffs.

## TWENTY-SECOND CAUSE OF ACTION FOR VIOLATION OF PLAINTIFF'S RIGHTS UNDER THE 4TH AMENDMENT OF THE U.S. CONSTITUTION - PURSUANT TO 42 U.S.C. SEC. 1983

92. Plaintiff realleges all facts and allegations in previous paragraphs and subparagraphs as though fully incorporated herein.

93. Plaintiff alleges that Ofc. Gomez violated Plaintiff's rights under the 4th Amendment of the U.S. Constitution by depriving Plaintiff of his guaranteed right to security in his person and and personal effects against unlawful search and seizure by detaining Plaintiff, entering Plaintiff's apartment, and conducting a search of Plaintiff's apartment with neither probable cause nor statutory authority to do so, when on August 31, 2015, Gomez responded to Plaintiff's apartment and unnecessarily placed him in handcuffs, opened Plaintiff's door from its sealed position, entered Plaintiff's apartment, and conducted a search of Plaintiff's apartment.

Joel Jennings Warne v City and County of San Francisco, et al.

**TWENTY-THIRD CAUSE OF ACTION FOR THE INTENTIONAL INFLICTION OF**

**EMOTIONAL DISTRESS**

94. Plaintiff realleges all facts and allegations in previous paragraphs and subparagraphs as though fully incorporated herein.

95. Plaintiff alleges that Ofc. Gomez engaged in outrageous conduct with the intention to cause, or exhibited reckless disregard of the probability of causing, emotional distress, that this conduct caused severe emotional suffering and that there is a causal nexus between that conduct and the severe emotional suffering.

**TWENTY-FOURTH CAUSE OF ACTION AGAINST THE CITY AND COUNTY OF SAN FRANCISCO UNDER THE DOCTRINE OF VICARIOUS LIABILITY FOR CAUSES OF ACTION TWENTY-ONE THROUGH TWENTY-TWO**

96. Plaintiff realleges all facts and allegations in previous paragraphs and subparagraphs as though fully incorporated herein.

97. Plaintiff alleges that Ofc. Gomez, in so far as he is, or was at the time of occurence, an employee by the CCSF, and/or any of their political subdivisions, and was, therefore, acting as agents of the CCSF.

98. Plaintiff alleges that, under the doctrine of vicarious liability (or 'Respondeat Superior') negligence by an agent of the the CCSF also constitutes negligence by the CCSF; therefore, the CCSF is liable for causes of action thirteen through nineteen.

**TWENTY-FIFTH CAUSE OF ACTION FOR DEFAMATION**

99. Plaintiff realleges all facts and allegations in previous paragraphs and subparagraphs as though fully incorporated herein.

- 41 -

Joel Jennings Warne v City and County of San Francisco, et al.

100. Plaintiff alleges that, in whole or in part, DOES 1-1,000, each of whom is known and/or believed to be an elected, appointed, employed, or other agent of the CCSF, engaged in activity that amounted to defamation when, as alleged to have been in retaliation for Plaintiff's quest to receive copies of the video surveillance footage from SFGH during Plaintiff's admission, such agents published Plaintiff's admittedly inaccurate and generally defamatory medical records on the CCSF's public website. (Cal. Civ. Code Sec. 44.)

101. Plaintiff alleges that, while he provided the medical records to the CCSF's Sunshine Ordinance Task Force prior to a November 17, 2015, hearing in order to defend the cause for disclosure of the video surveillance footage, he had a reasonable expectation that those records would be kept confidential as required under the Brown Act (Govt. Code Sec. 54957.5) and the CPRA by derivative (Govt. Code Sec. 6254(c).

102. Plaintiff alleges that the medical records were provided in order to perform his civic duty to shed light on misconduct by public servants of and in the CCSF and not for any form of public benefit or personal economic purpose.

103. Plaintiff alleges that, once published on the internet, documents cannot be "scrubbed," that the publishing of his admittedly inaccurate medical record on the website cause him emotional and economic harm, has compromised his ability to seek reemployment, and that damages are recurring and continuing.

104. Plaintiff alleges that since there is no doubt or dispute over whether the medical records were published on a public website, that the medical records contain admitted "inaccuracies," because the medical records contain generally defamatory information, and because the Brown Act and, therefore, the CPRA, sets forth the standard of care for handling such medical records by pubic agencies and officials, the case for defamation is made out unless Defendant CCSF can prove the veracity of every defamatory statement or claim made within the medical record and that Plaintiff need not prove that any specific damages occurred, have reoccurred, or will continue to occur. (Cal. Civ. Code Sec. 45a.)

Joel Jennings Warne v City and County of San Francisco, et al.

1    105. Plaintiff further alleges that, even if Respondents were able to prove the veracity of every

2          defamatory statement or claim made in the medical record, a claim of defamation is still

3          made out in that the documents were barred from public disclosure as a matter of law.

4

5        **TWENTY-SIXTH CAUSE OF ACTION FOR INTENTIONAL INFLICTION OF**

6                                  **EMOTIONAL DISTRESS**

7

8    106. Plaintiff realleges all facts and allegations in previous paragraphs and subparagraphs as

9          though fully incorporated herein.

10   107. Plaintiff alleges that DOES 1-1,000, responsible for the publication of Plaintiff's medical

11         records on the CCSF's public website, knew or should have known that disclosure was

12         impermissible under law, that they contained defamatory and admittedly "inaccurate"

13         statements and claims, and that publication would likely cause Plaintiff severe emotional

14         distress, public discredit, reemployment prospects, etc., therefore, a case of intentional

15         infliction of emotional distress is made out.

16

17    **TWENTY-SEVENTH CAUSE OF ACTION AGAINST THE CITY AND COUNTY OF**

18      **SAN FRANCISCO UNDER THE DOCTRINE OF VICARIOUS LIABILITY FOR**

19          **CAUSES OF ACTION TWENTY-FIVE THROUGH TWENTY-SIX**

20   108. Plaintiff realleges all facts and allegations in previous paragraphs and subparagraphs as

21         though fully incorporated herein.

22   109. Plaintiff alleges that, in whole or in part, DOES 1-1,000, each of whom is known and/or

23         believed to be an elected, appointed, employed, or other agent of the CCSF, were acting as

24         agents of the CCSF at the time the medical records were published on the CCSF's public

25         website and, therefore, the CCSF is liable for damages caused by such conduct.

26

27    **TWENTY-EIGHTH CAUSE OF ACTION FOR VIOLATION OF 9 C.C.R. SEC. 864 AND/**

28    **OR SEC. 885 BY FAILING OR REFUSING TO PROCESS PLAINTIFF'S PATIENTS'**

- 43 -

Joel Jennings Warne v City and County of San Francisco, et al.

**ADVOCATE GRIEVANCE, SUBMITTED ON OR AROUND SEPTEMBER 3, 2015,**

**WITH A REVISED COMPLAINT FILED ON OR AROUND SEPTEMBER 15, 2015**

110. Plaintiff realleges all facts and allegations in previous paragraphs and subparagraphs as though fully incorporated herein.

111. Plaintiff alleges that, in whole or in part, DOES 1-1,000, each of whom is known and/or believed to be an elected, appointed, employed, or other agent of the CCSF and/or the UC Regents, received a patient grievance filed by Plaintiff via facsimile on or around September 3, 2015, with a revised grievance filed on or around September 15, 2015. While Defendant CCSF sent Plaintiff a confirmation of receipt of grievance a few weeks later and SFGH Emergency Department Nursing Director Patricia Carr left Plaintiff a voicemail on September 9, 2015, stating that she had been assigned to investigate the grievance, as of the date of this writing, it has been approximately 417 days since the grievance was filed and, to date, Plaintiff has received no response thereto.

112. Plaintiff alleges that Defendant CCSF has admitted, either through pleadings in a related but unincorporated petition for writ of mandamus or other communications, that Plaintiff was not a candidate for an involuntary psychiatric hold under WIC Sec. 5150. They do not appear to deny that Plaintiff was, in fact, detained, but to date, have refused to cite the law under which he was detained. For that reason, this cause of action alleges a violation of either 9 C.C.R. Sec. 864 and/or Sec. 885, depending on which law they ultimately decide justified Plaintiff's involuntary detention at SFGH between August 8-9, 2015.

## VI. TRIAL BY JURY

113. Plaintiff respectfully requests a trial by jury in this matter.

## VII. PRAYERS

- 44 -

Joel Jennings Warne v City and County of San Francisco, et al.

1   114. Plaintiff realleges all facts and allegations in previous paragraphs and subparagraphs as

2         though fully incorporated herein

3   115. WHEREFORE NOW, I, Joel Jennings Warne, Plaintiff in the aforementioned causes of

4         action, pray for judgement against each defendant, in proportions prescribed by judge or jury,

5         to be in excess of $25,000, the statutory minimum for an unlimited civil action, and:

6         115.1. All court and legal fees incurred as a result of this complaint for damages;

7         115.2. Special damages, according to proof, when necessary, and without proof, when

8                 unnecessary;

9         115.3. Any other relief that this Court, and/or its jury members, find just and proper.

10

11

12                                          Signed under penalty of perjury under
                                            the laws of the State of California at
13                                          Tyler, TX.

14   Dated: October 20, 2016

15                                          Joel Jennings Warne, *in pro per*
                                            20523 County Road 146
16                                          Tyler, TX 75703
                                            415-815-8512
17                                          JoelJWarne@icloud.com

18

19

20

21

22

23

24

25

26

27

28

- 45 -

Joel Jennings Warne v City and County of San Francisco, et al.

# EXHIBIT A

# CLAIM AGAINST THE CITY AND COUNTY OF SAN FRANCISCO

Before completing this form please read the instructions on the back. Untimely claims will be returned. Please submit this form and supporting documentation to the **Controller's Office, Claims Division, 1390 Market Street, 7th Floor, San Francisco, CA 94102** in person or by mail.

\* = REQUIRED   \*\* = REQUIRED IF KNOWN

**1. Claimant's Name and Home Address (Please Print Clearly)**
\* Joel Jennings Warne
1651 Market ST, APT 515
City San Francisco  State CA  Zip 94103
Telephone Daytime 415-815-8512

**2. Send Official Notices and Correspondence to:**
\* Joel Warne
20523 C.R. 146
City Tyler  State TX  Zip 75703
Telephone Daytime 415-815-8512

**3. Date of Birth** 12/12/1983
**4. Social Security Number** 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
**5. Date of Incident** \*8/8-9/2015 on ... Aug
**6. Time of Incident (AM or PM)** \*\* > 9:15 p.m. on Aug 8

**7. Location of Incident or Accident** \*\* 1001 Potrero Ave, S.F., CA 94110
**8. Claimant Vehicle License Plate #, Type, Mileage, and Year** \*\* N/A

**9. Basis of Claim.** \* See attached addendum for specific cause(s), bases, and injuries (total 7 pgs)

Name, I.D. Number and City Department of City Employee: \*\* Dr. Andrea Tenner, et al.  Type of City Vehicle \*\* N/A  Vehicle License: \*\* N/A

**10. Description of Claimant's injury, property damage or loss** \* see attached addendum for injuries (total 7 pgs.) full effect of injuries not fully known or realized.

**11. Amount** ITEMS \*\*not yet fully known $
TOTAL AMOUNT $
Court Jurisdiction: Limited (up to $25,000) ☐  Unlimited (over $25,000) ☑

**12. Witnesses (if any) Name** 1. Bonnie Jennings  Address 20523 C.R. 146 Tyler, TX  Telephone 963-360-6122

**13.** \* Joel Warne  Date 2/5/2016  Pro Se
Print Name Joel Warne  Relationship to Claimant

Do Not Write In This Space
CONTROLLER CITY & COUNTY OF SAN FRANCISCO
16 FEB -5 PM 1:19 RECEIVED

CRIMINAL PENALTY FOR PRESENTING A FALSE OR FRAUDULENT CLAIM IS IMPRISONMENT OR FINE OR BOTH. (PENAL CODE §72)
CA/FORM 02/14

Joel J Warne

1651 Market St,
APT 515
San Francisco, CA 94103
415-815-8512
JoelJWarne@gmail.com

February 4, 2016

City Attorney Dennis Hererra
c/o San Francisco City Comptroller
Claims Division
1390 Market St, 7th Floor
San Francisco, CA 94102-5408

To Whom It May Concern:

Please find enclosed an Administrative Claim against the City and County of San Francisco
("C.C.S.F."). It pertains to mistreatment, engaging in conduct that the San Francisco Department
of Public Health's own training modules describe as "human rights" violations, of my person
after I self-admitted to San Francisco General Hospital on August 8, 2015.

You are respectfully asked to maintain all material evidence in the C.C.S.F.'s possession, should
settlement become unlikely and I be left to file a civil complaint with the Superior Court of the
State of California. That includes anything that may be subject to subpoena, as well other items
specifically identified under separate cover(s) (e.g., emailed notices and requests), documents
requested by me pursuant to the California Public Records Act (Cal. Government Code Sec.
16520, et seq.) ("CPRA") or San Francisco Sunshine Ordinance (S.F. Administrative Code Sec.
67, et seq.) (regardless of current disposition of each request), or documents provided by the
C.C.S.F. to the California Department of Public Health and California Board of Medicine in
investigation of similar complaints filed therewith.

This Administrative Complaint is being filed in conjunction with a Writ of Mandate to be filed
with the Superior Court of the State of California, alleging violations of the CPRA (not yet
docketed).

Sincerely yours,


Joel J. Warne

Joel J Warne

1651 Market St,
APT 515
San Francisco, CA 94103
415-815-8512

February 4, 2016

By Electronic Mail and Follow-up by Certified U.S. Mail

City Attorney Dennis Hererra
c/o San Francisco City Comptroller
Claims Division
1390 Market St, 7th Floor
San Francisco, CA 94102-5408

RE: Addendum to Administrative Claim (August 8-9, 2015 Mistreatment of Joel J. Warne at San Francisco General Hospital)

Basis for Claim:

For the purposes of this addendum, "medical staff" refers to Dr. Andrea Tenner ("Tenner"), M.D., University of California San Francisco Medical Center and San Francisco General Hospital ("S.F.G.H."), and anyone under her supervision or under whose supervision Tenner provided treatment to me on August 8-9, 2015 at S.F.G.H., inclusive of sub-clinical, nursing, and paraprofessional classifications charged with my care.

Unless specified, the City and County of San Francisco ("C.C.S.F.") generally will be listed as the violator though culpability may lie with medical staff, San Francisco Sheriff's Department ("Sheriff's") deputies, San Francisco Police Department, or other agencies whose specific roles may not yet be known or fully understood.

Use of "human rights" or "basic human rights" is adapted directly from the San Francisco Department of Public Health's ("S.F.D.P.H.") "5150 Involuntary Detention Training Manual," which is described as "mandatory" for all authorized medical personnel. (*See* https://www.sfdph.org/dph/files/CBHSdocs/5150Manual042010.pdf) In general, use of said terms refers to the the Lanterman-Petris-Short Act ("LPSA")(codified at Cal. Welfare and Institutions Code ("WIC") Secs. 5000-5550) and relevant Patients' and Payers' Bills of Rights (22 C.C.R. Sec. 72527, WIC Secs. 5325-5325.1, Cal. Health and Safety Code ("HSC") Sec. 1599.1, HSC Secs. 1339.50-1339.59)

In conjunction with the attached Administrative Claim, I allege, *inter alia*:

2 of 8

The C.C.S.F. violated my basic human rights when it administered excessive or unnecessary amounts of benztropine mesylate (or any amount of yet-to-be-identified "different medication") solely for the convenience of medical staff, for punitive cause, as a means to humiliate, or for cause(s) as otherwise incompatible with relevant laws, rules, regulations, and policies prohibiting such conduct.

The C.C.S.F. violated my basic human rights when it administered excessive or unnecessary amounts of haloperidol solely for the convenience of medical staff, for punitive cause, as a means to humiliate, or for cause(s) as otherwise incompatible with relevant laws, rules, regulations, and policies prohibiting such conduct.

The C.C.S.F. violated my basic human rights when it administered excessive or unnecessary amounts of lorazepam solely for the convenience of medical staff, for punitive cause, as a means to humiliate, or for cause(s) as otherwise incompatible with relevant laws, rules, regulations, and policies prohibiting such conduct.

The C.C.S.F. violated my basic human rights when it administered the aforementioned pharmaceuticals without informed consent, as evidenced in part by the lack of notes or inclusions in or into the medical record (no rights disclosures, no disclosures about medications and indications for medication, etc.). The law requires the disclosure of medical treatment to be joined with both oral and written notice, and that such written notice must be incorporated into the patient's medical record. S.F.D.P.H. officials have already conceded that no such records were created or incorporated into the medical record.

The C.C.S.F. violated my basic human rights when it obtained written "consent" for treatment while I was restrained, under the influence of antipsychotic medications, and generally under circumstances amounting to duress, as well as only after medical treatment was forcibly administered.

The C.C.S.F. violated my due process rights by failing to seek an opinion from a licensed psychiatrist or other mental health clinician prior to forcibly administering treatment, as required by law, and by failing to seek a competence order in the absence of consent, as also so required and when unaccompanied by an 'emergency' (WIC Sec. 5008(m)).

The C.C.S.F. violated my basic human rights and committed what amounts to medical libel when it falsified the medical record, as characterized by purely fictitious claims (e.g. that I have Hepatitis C or that I was exhibiting ideations of harm against myself or others) and incorporating information purported to have been entered into the medical record days before it could have possibly been known (e.g. a current medication of 'Adaril' five (5) days prior to it actually being prescribed by my G.P.C., or regular family physician, on August 13, 2015). In general, they did so by creating a medical record to sell a false narrative and only in anticipation of litigation.

The C.C.S.F. violated my basic human and due process rights by failing to document any specific conduct, behaviors, or mannerisms and how those behaviors, or other conduct or mannerisms,

were likely to result in 'severe bodily injury;' documenting instead only vague descriptions of behaviors, in some cases constitutive of essential life functions (e.g. "moving extremities"), and associating them with an equally vague description of possible outcomes (e.g. "significantly likely to cause injury to himself or others"). In essence, the medical record deprived me of an accurate record of the specific behaviors exhibited and how those behaviors were likely to cause specific injuries of the requisite severity and imminence to warrant an 'emergency,' as defined under the same.

The C.C.S.F., via the medical staff, committed medical battery against me by unlawfully detaining me and administering antipsychotic medications over my objections, and without the requisite components of informed consent, as described above (e.g. written notice of rights and alternatives).

The Sheriff's deputies involved in the incident were complicit and equally culpable in their attempt to detain me, as solely a response to my raising objections to the standard of care and voicing my intent to discharge myself to seek care elsewhere (where I would be provided access to a cardiologist and, if truly indicated, psychological evaluation by a licensed psychiatrist or mental health clinician).

The C.C.S.F. violated my basic human right as a patient to exercise, when medical staff forbid me from standing, let alone sitting up in my gurney amidst complaints of severe cardiac symptoms and their refusal to conduct a second EKG (the first and only conducted at least an hour prior to the onset of symptoms) or to refer me to a cardiologist for evaluation and, if necessary, treatment.

The C.C.S.F. violated my basic human right to make a phone to family, once they discovered that my mother was a registered nurse whose career specialization was in psychiatric care). Relevant laws, rules and regulations require phone calls to be permitted for patients.

The C.C.S.F. violated my basic human and constitutional rights to protection from unlawful search and seizure when, while also forcing me to sign documents without allowing me to read them or to decline my signature, Sheriff's deputies, medical staff, and potentially others, confiscated my personal cellphone and accessed it without either my consent or an order from a judge authorizing, by virtue of a warrant, that search and seizure.

The C.C.S.F. committed battery against my person when Tenner forcibly removed the wall-mounted phone next to the nurse's station from my hands in attempts to disrupt my call to my mother.

The C.C.S.F. engaged in injurious and aggravated assault, in addition to medical battery, when my gurney was left in the middle of a busy hallway and subsequently pushed with enough force to cause me to have to leap to my feet on the gurney in order to avoid falling, should the gurney impact something or someone or otherwise tip over.

The C.C.S.F. engaged in injurious and aggravated assault, in addition to medical battery, when it administered benztropine mesylate (or another yet-to-be-identified "different medication") in sufficient dosages to cause cardiac symptoms, characterized by numbness in hands and feet, tingling/fluttering sensations in fingers, elevated blood pressure, heart murmurs and palpitations, etc., and documented that such symptoms 'did not exist' only by their refusal to perform a follow-up EKG to confirm the original results or to refer me to a cardiologist for evaluation and, if necessary, treatment.

The C.C.S.F. violated my basic human rights when, accepting the medical record notes as true solely for the sake of argument, despite purportedly exhibiting "negative thoughts of harming myself or others" as early as within fifteen (15) minutes of admission, I was not then or thereafter referred to a licensed psychiatrist or mental health clinician prior to the situation purportedly rising to the level of constituting an 'emergency' (or at any point thereafter). Even if such an emergency existed, which it could not have, as no threats against self or others were ever voiced to medical staff, their inaction at the first signs of a legitimate problem would have contributed to such an emergency situation, and thereby the need to medicate over my objections and in the absence of a court order, if not created the emergency situation in its entirety. Such conduct could have represented a public or personal health crisis, had I gone home and followed-through on those, albeit dubious, threats of self-harm after being deprived of the opportunity to see a licensed psychiatrist or mental health clinician for evaluation and, if indeed indicated by legitimate threats, treatment.

The C.C.S.F. violated my basic human rights by resorting to both physical and chemical restraints when, assuming the contents of the medical report are true solely for the sake of argument, medical staff makes no indication in the medical report as to why the physical restraints alone would not have prevented "severe bodily injury" to myself or others. I note, again, that the medical record fails to state, generally, that any threat of "severe bodily injury" existed as a consequence of my conduct.

The C.C.S.F. violated my basic human rights to privacy by leaving me on a gurney on display in a public hallway during the entirety of my admission without ever having ordered me a private room.

The C.C.S.F. violated my basic human rights when, despite acknowledging that "[the patient] wants an attorney [and to speak with the Patients' Advocate]," no such legal resources were made available to me. In fact, I was never provided the contact information for the Mental Health Clients' Rights Advocate or the contact information for a patients' rights advocate until I filed either a CPRA request for that specific information weeks later or filed a complaint with the California Department of Public Health and they provided the information to me (Cal. WIC Sec. 5325(h)). Nor do the notes in the medical record claim otherwise.

The C.C.S.F. violated the Payers' Bill of Rights by charging me in excess of 20,000% of the price for benztropine mesylate listed in its chargemaster filed with the California Department of Statewide Health Planning and Development (Cal. Health and Safety Code 1339.50-.59). I note

this amount represents 500-1300% of prices imposed by similarly situated public hospitals, based on their own CPRA disclosures to me and that benztropine mesylate is never used for the purposes indicated by the medical record in the subject case by those similarly situated hospitals. I note, also, that two (2) of the hospitals reviewed receive their pharmaceuticals through the same supply-chain distributor as S.F.G.H.

The C.C.S.F. additionally violated my right to informed consent when on or around October 13, 2015, Emergency Department Nursing Director Patricia Carr ("Carr"), identified in a September 9, 2015 voicemail as the person responsible for investigating my grievance, told me that she was not to answer any questions with regard to my care, such as whether I was administered name brand or generic benztropine mesylate, at the direction of Risk Management Director Jay Kloo. This would be appropriate if I was a litigant; alas, I am still at this time only a patient from whom S.F.G.H. is still seeking compensation for care.

The C.C.S.F. violated my basic human rights when it denied me the right to timely consideration of a grievance filed with the S.F.G.H. patients' advocate on September 4, 2015. It has been five (5) months, and I have yet to receive anything more than an acknowledgement from the patients' advocate division of S.F.G.H. On our one (1) phone call, Carr stated that the investigation was complete and that the finding would be sent to me shortly. I have not received any form of notice from the patients' advocate assigned to my case that they intended to interview me or take part in any fact-finding exercise. The California Department of Public Health Facility Evaluator Nurse also informed me in October 2015 that the patients' advocate investigation was either complete or near completion. The obvious case is that patients' advocates are withholding disclosure of their findings on the basis of a pending California Department of Public Health investigation and that the decision to withhold was continued pending an investigation by the California Medical Board.

The C.C.S.F. violated my basic human rights when after three (3) versions of the bill for care were received, each with a different subtotal, an additional amount for approximately $753 was submitted to my insurance for payment but never included on any of the three (3) submitted bills.

The C.C.S.F. violated my basic right to privacy and confidentiality of relevant yet personal medical records when, in retaliation for September 18 and 23, 2015 complaints to the Sunshine Ordinance Task Force for the refusal to provide pertinent records, the Sunshine Ordinance Task Force and City Attorney's Office published unredacted documents, including the complaint(s) themselves and supporting documents, constitutive of personal health records, on the C.C.S.F.'s public website.

The C.C.S.F. violated my basic rights when just five (5) days after filing CPRA requests with the San Francisco Police Department, Sheriff's Department, and District Attorney's office on or around August 26, 2015, Ofc. Gomez of the Ingleside Precinct for the San Francisco Police Department arrived at my apartment, placed me in handcuffs, handled me roughly, and threatened me in order to attempt to coerce consent to enter and search my apartment on August 31, 2015. He ultimately entered without consent or probable cause. An internal affairs complaint

has been pending for months with the Office of Citizen's Complaints ("O.C.C."), and an interview wasn't attempted until two (2) months after the complaint was filed.

The O.C.C., via its Investigator Gregory Underwood ("Underwood"), offered threateningly that "cooperation with the investigation" depended on my willingness to provide them my medical records from the S.F.G.H. visit, as described above and as occurred approximately three (3) weeks prior to Ofc. Gomez' visit to my apartment. He also premised "cooperation" on my willingness to provide demographic information that is unnecessary to investigate the dispute (date of birth and race).

On or around December 26, 2015, I reported to Underwood and O.C.C. General Counsel Manuel "Manny" Fortes ("Fortes") that an unknown officer was heard by me in my building speaking to my property manager, known only as "Greg," and telling him that "[Ofc. Gomez] was just following a manual that [the police department] has for conducting 'welfare checks;'" this would be a suggestion that **a.** compromised the testimony of a key witness; and **b.** constituted a conclusory opinion at a time that an investigation into whether the manual was followed was still in progress. I note, too, that on February 4, 2016, Fortes informed me that while I am to have faith in the objectivity of the O.C.C.'s investigation into Ofc. Gomez' conduct, I am not entitled to know whether they were able to (voluntarily) concede, by means of substantiating the facts, that an (likely uninvolved) officer compromised the investigation by tampering with witnesses and providing conclusory opinions as statements of fact during the course of an investigation into that very question.

Conclusively, this case involves mistreatment at S.F.G.H., which predicated reprisal for for exercising my right to request the documents necessary to establish the facts of that mistreatment and in the case of Ofc. Gomez's violations of my 4th Amendment rights, led to further abuses to preempt investigative objectivity.

The effects have been compounded by a lack of psychological resources in the San Francisco community. Despite having private insurance, calls and emails to more than 23 preferred providers have gone unanswered or rejected for lack of new patient availability. No general, since experiencing this treatment, I have experienced weight fluctuations; a loss of enjoyment of life and an inability to achieve fulfillment in things that ordinarily inspire or motivate me; severances of relationships with friends and family; personal anguish; degradation of character; humiliation; abnormal and excessive fatigue; depression and listlessness; anxiety and nervousness; I have lost work opportunities, including a recent job offer which was subsequently withdrawn due to information published on the C.C.S.F. website related to my personal health; I've suffered anxieties due to an inability to trust peace officers and public officials; I've had to leave San Francisco in order to seek psychological support where more resources are available; I have suffered damage to my credit and experienced other financial handicaps; and I have concerns that my earning potential has been adversely impacted. I have also, now, had subsequent blood pressure and cardiac issues, yet I am afraid to enter a medical facility to have those issues properly evaluated.

I believe settlement is possible, lest the video surveillance footage be acknowledged by judicial order as a public record and the full extent of S.F.G.H.'s abuses become public knowledge. Additionally, I have a reasonable suspicion that the video documents submitted to California Department of Public Health and the California Medical Board may not be the fully available record of events.

Sincerely yours,


Joel J. Warne

**EXHIBIT B**



CITY AND COUNTY OF SAN FRANCISCO

OFFICE OF THE CITY ATTORNEY

DENNIS J. HERRERA
City Attorney

Grace Glenn
Claims Adjuster

DIRECT DIAL:    (415) 554-4273
E-MAIL:    GRACE.GLENN@SFGOV.ORG

April 26, 2016

Joel Jennings Warne
20523 CR 146
Tyler, TX 75703

RE:    Claim of:    Joel Jennings Warne    / Claim Number: 16-02131
       Department:    DPHGH    DPH General Hospital (86)
       Incident Date:    August 8, 2015
       Claim Filed:    February 5, 2016

**NOTICE OF ACTION UPON CLAIM**          **PLEASE TAKE NOTICE THAT**

An investigation of your claim filed with the City and County of San Francisco (CCSF) has revealed no indication of liability on the part of the City and County. Accordingly, your claim against the City and County of San Francisco is **DENIED**.

Please be advised that while the CCSF may operate the facility involved in this claim, the Regents of the University of California employ the physicians and other ancillary staff allegedly involved. Please be advised that the Regents of the University of California has its own administrative requirements and your claim against the CCSF does not constitute a claim against the Regents or otherwise satisfy those prerequisites. If you believe you have a claim against the Regents you should file it at the following address:

*Office of the General Counsel of the Regents*
*1111 Franklin Street, Eighth Floor*
*Oakland, California 94607*

**WARNING**

Subject to certain exceptions, you have only six (6) months from the date this notice was personally delivered or deposited in the mail to file a court action on this claim. See Government Code section 945.6. This time limitation applies only to causes arising under California law for which a claim is mandated by California Government Claims Act, Government Code sections 900 et. seq. Other causes of action, including those arising under federal law, may have shorter time limitations for filing.

You may seek the advice of an attorney of your choice in connection with this matter. If you desire to consult an attorney, you should do so immediately.

Please also be advised that, pursuant to Code of Civil Procedure sections 128.7 and 1038, the City and County of San Francisco will seek to recover all costs of defense in the event an action is filed in this matter and it is determined that the action was not brought in good faith and with reasonable cause.

Very truly yours,

DENNIS J. HERRERA
City Attorney

Grace Glenn
Claims Adjuster

---

FOX PLAZA · 1390 MARKET STREET, 7TH FLOOR · SAN FRANCISCO, CALIFORNIA 94102-5408
RECEPTION: (415) 554-3900 ·   FACSIMILE: (415) 554-8795

n:\claim\cl2016\16-02131\01101290.docx

16-02491

RECEIVED

**SUM-100**

# SUMMONS
## (CITACION JUDICIAL)

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

OCT 28 AM 10:29

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

City and County of San Francisco
(Additional Parties Attachment Form is attached.)

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

Joel Warne

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br><br>California Superior Court for San Francisco<br>400 McAllister St., San Francisco, CA 94102 | **CASE NUMBER:**<br>*(Número del Caso):*<br><br>CGC-16-555010 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

Joel Warne, 20523 County Road 146, Tyler, TX 75703, (415) 815-8512

CLERK OF THE COURT

| | | | |
|---|---|---|---|
| DATE:<br>*(Fecha)* | OCT 2 / 2016 | Clerk, by<br>*(Secretario)* | , Deputy<br>*(Adjunto)* |

RONNIE OTERO

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☑ on behalf of *(specify):* City and County of San Francisco

   under: ☐ CCP 416.10 (corporation)    ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)    ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)    ☐ CCP 416.90 (authorized person)
   ☑ other *(specify):* CCP 416.50 (public entity)
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 (Rev. July 1, 2009)

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

SUM-200(A)

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Joel Warne v. City and County of San Francisco, et al. | CGC-16-555010 |

### INSTRUCTIONS FOR USE

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.

→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

**List additional parties** *(Check only one box. Use a separate page for each type of party.):*

☐ Plaintiff   ☑ Defendant   ☐ Cross-Complainant   ☐ Cross-Defendant

University of California Regents;

Dr. Andrea Tenner (Lic. # 132134), in her official and personal capacities; and

DOES 1-1,000.

Page ___1___ of ___1___

Page 1 of 1

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**