United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JOEL JENNINGS WARNE,

          Plaintiff,

     v.

CITY AND COUNTY OF SAN
FRANCISCO, et al.,

          Defendants.

Case No.16-cv-06773-JSC

**ORDER RE: DEFENDANTS'
MOTIONS TO DISMISS**

Re: Dkt. Nos. 59 & 73

Plaintiff Joel Jennings Warne, proceeding pro se, brings this action alleging violation of his civil rights as well as claims under state law relating to medical treatment he received at San Francisco General Hospital in 2015.  Defendants, the Medical Board of California, California Attorney General Xavier Becerra[1], and Director of the California Department of Public Health Karen Smith (collectively "the State Defendants"), have moved to dismiss for lack of subject matter jurisdiction and for failure to state a claim.  (Dkt. No. 73.)  Defendants, the Regents of the University of California (the "Regents") and Dr. Andrea Tenner, have separately moved to dismiss for failure to state a claim. (Dkt. No. 59.)  After carefully considering the parties' arguments the Court concludes that oral argument is unnecessary, *see* Civ. L. R. 7-1(b), and GRANTS IN PART AND DENIES IN PART Defendants' motions to dismiss.[2]  Plaintiff's claims against the State Defendants are barred by the Eleventh Amendment and many of Plaintiff's claims against the

---

[1] California Attorney General Xavier Becerra is substituted for his predecessor, Kamala Harris, pursuant to Federal Rule of Civil Procedure 25(d).

[2] The parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c).  (Dkt. Nos. 11, 15, 29 & 72.)

Regents and Dr. Tenner fail to state a claim upon which relief can be granted.

## BACKGROUND

### A. Allegations of the Complaint

Plaintiff voluntarily admitted himself to San Francisco General Hospital (the "Hospital") on August 8, 2015 after having an adverse reaction to a long-prescribed medication.  (Dkt. No. 46 (First Amended Complaint ("FAC")) at ¶ 27.)  During his admission he was "physically assaulted by medical staff, verbally degraded and humiliated," denied laboratory test results, refused the right to call his mother, refused access to cardiac monitor data or a consultation with a cardiologist, deprived of his phone, physically restrained in four point restraints, and forcibly administered psychotropic drugs including Haldol and Cogentin.  (*Id.* at ¶¶ 27-28.)   He was also forced to sign documents and questioned while he was in and out of consciousness.  (*Id.* at ¶¶ 28-29.)   The morning after his admission, he was awakened between 5:00 and 6:00 a.m. and discharged without any explanation, discharge instructions, or information regarding any medication he had received during his time at the Hospital.  (*Id.* at ¶ 30.)  Upon returning home, he slept for 48 hours and only has limited memories of what happened between August 9 and 23, 2015.  (*Id.*)

On August 25, 2015, Plaintiff filed requests for documents pertaining to himself with the San Francisco Sheriff's Department and the San Francisco District Attorney's Office.  (*Id.*)  He also filed a complaint with the California Department of Public Health based on his "belief that the 'care' [he] received at [San Francisco General Hospital] was a pretext for police misconduct and harassment stemming from his prior employment and whistleblower-related activities with respect to mental health public policy in Contra Costa [County] in which he was engaged as well as the belief that he had been placed on a '5150 hold' pursuant to the LPS."[3]  (*Id.* at ¶ 31.) The next day, he filed a request with the San Francisco Police Department for records about himself.  (*Id.* at ¶

---

[3] The Lanterman–Petris–Short Act ("LPS Act"), codified at Welfare and Institutions Code section 5000 et seq., "governs the involuntary treatment of the mentally ill in California."  *See Jacobs v. Grossmont Hosp.*, 108 Cal.App. 4th 69, 74 (2003).  Under Welfare and Institutions Code § 5150, a person may be involuntarily committed to a county mental health facility for 72 hours if there is probable cause to believe the individual "as a result of a mental disorder, is a danger to others, or to himself or herself, or is gravely disabled."

United States District Court
Northern District of California

United States District Court
Northern District of California

1   32.)  Five days after he did so, San Francisco Police Officer Seven Gomez came to his home to

2   perform a "welfare check" during which he entered Plaintiff's apartment without consent and

3   placed Plaintiff in handcuffs.  (*Id.* at ¶ 33.)

4        A few days later, Plaintiff received an incomplete bill for services, but not the medical

5   records he had requested.  (*Id.* at ¶ 34.)  Plaintiff therefore went to the Hospital to demand his

6   medical records.  (*Id.*)  He was provided with an incomplete version of his medical record which

7   incorrectly stated that he had Hepatitis C, had been injecting Adaril, that he had engaged in a week

8   long drug binge prior to his admission, and that he was "detained and forcibly administered

9   psychotropic drugs because he was paranoid, suicidal, homicidal, moving extremities in a manner

10   which could cause harmed to self of others, and exhibiting violent or aggressive behavior." (*Id.*)

11        Plaintiff thereafter filed a records request with the San Francisco Sheriff's Department and

12   the San Francisco Department of Public Health seeking 52 categories of records including the laws

13   supporting his detention and the forced administration of drugs, his entire medical record, video

14   surveillance from the Hospital, and pricing information for the psychotropic drugs.  (*Id.* at ¶ 35.)

15   Plaintiff then filed a complaint with the Medical Board of California regarding Dr. Andrea Tenner,

16   the attending physician who oversaw Plaintiff's treatment.  (*Id.* at ¶ 36.)  The San Francisco

17   Department of Public Health responded a month later that Plaintiff had not been placed on an

18   involuntary psychiatric detention and otherwise denying his document request.  (*Id.* at ¶ 37.)

19        Plaintiff's complaint with the California Department of Public Health was denied because

20   "doctors have 'broad discretion' to detain patients against their will and to forcibly administer

21   psychotropic drugs."  (*Id.* at ¶ 38.)  In his complaint closure letter of October 27, 2015, it stated

22   "in essence" that "what happened was legal, but [the CDPH] isn't going to provide the legal

23   citations because it either doesn't want to, isn't willing to, or doesn't have to do so." (*Id.* at ¶ 40.)

24   Plaintiff later received a letter from the Medical Board of California concluding its investigation of

25   his complaint against Dr. Tenner and Dr. Yeh, which stated in part that: "what happened was

26   legal, but [the CDPH] isn't going to provide the legal citations because it either doesn't want, isn't

27   willing to, or doesn't have to do so."  (*Id.* at ¶ 39.)

28        Plaintiff also filed a complaint with the City and County of San Francisco which was

rejected because Dr. Tenner was employed by the University of California Regents and not the City.  (FAC at ¶ 44.)  He then forwarded the administrative claim and rejection notice to Charles Robinson, chief counsel for The Regents, and the "Regents acknowledged receipt of the administrative claim not too long thereafter" by informing Plaintiff that they are not subject to the Government Claims Act.  (*Id*. at ¶ 45.)

On July 7, 2016, Plaintiff filed a petition for writ of mandamus in the San Francisco Superior Court seeking disclosure of any video surveillance captured during Plaintiff's time at the Hospital, as well as the law or regulations which justify his detention, and documents about Plaintiff, and his entire medical record. (*Id*. at ¶ 46.)  He was subsequently provided a "scrubbed" version of the video surveillance. (*Id*. at ¶ 47.)

Plaintiff believes that the "care administered was a pretext for a criminal investigation and/or arrest, by individuals whose identities are unknown to Plaintiff at present, and that while bound and under the influence of psychotropic drugs, he was interrogated, questioned, or otherwise interviewed by individuals who did not identify themselves as investigators or law enforcement officers, and that the physical and chemical restraints were used to effectuate that arrest under false pretenses."  (*Id*. at ¶ 48.)

**B. Procedural History**

On October 24, 2016, Plaintiff filed this action against the City and County of San Francisco (the "City"), the Regents, and Dr. Andrea Tenner, in the Superior Court for the County of San Francisco.  (Dkt. No. 1-1.)  Defendants answered the complaint and removed the action to this Court based on federal question jurisdiction.  (Dkt. Nos. 1; 1-2)   Upon removal, the Regents and Dr. Tenner moved to dismiss.  (Dkt. No. 12.)  Prior to disposition of their motion to dismiss, Plaintiff filed his First Amended Complaint which added claims against San Francisco Police Officer Steven Gomez, California Attorney General Kamala Harris, the Director of the California Department of Public Health Karen Smith, and the Medical Board of California.  (Dkt. No. 46.)

The FAC includes 28 claims for relief: (1) declaratory relief under the Fourth and Fourteenth Amendments (as to all Defendants); (2) injunctive relief (as to all Defendants), (3) petition for writ of mandamus under California Code of Civil Procedure Section 1084 et. seq. (as

to the State Defendants); (4) medical negligence (as to Dr. Tenner); (5) medical negligence – meical [sic] malpractice (as to Dr. Tenner); (6) failure to obtain informed consent – medical malpractice (as to Dr. Tenner); (7) battery (as to Dr. Tenner); (8) medical battery (as to Dr. Tenner); (9) assault (as to Dr. Tenner); (10) false imprisonment/unlawful arrest (as to Dr. Tenner); (11) creating false medical records (as to Dr. Tenner); (12) intentional infliction of emotional distress (as to Dr. Tenner); (13) vicarious liability (as to the Regents); (14) violation of 42 U.S.C. § 1983 – Fourth, Eighth, and Fourteenth Amendments (as to Dr. Tenner); (15) violation of 42 U.S.C. § 1983 – First Amendment (as to Dr. Tenner); (16) vicarious liability (as to the City); (17) battery by a peace officer (as to the City); (18) assault by a peace officer (as to the City); (19) false imprisonment/unlawful arrest (as to the City); (20) violation of 42 U.S.C. § 1983 – Fourth, Eighth, and Fourteenth Amendments (as to the City); (21)  intentional infliction of emotional distress (as to the City); (22) battery by a peace officer (as to Officer Gomez and the City); (23) violation of 42 U.S.C. § 1983 – Fourth Amendment (as to Officer Gomez and the City); (24) violation of 42 U.S.C. § 1983 – First Amendment (as to Officer Gomez and the City); (25) intentional infliction of emotional distress (as to the City); (26) defamation per quod (as to the City); (27) violation of 42 U.S.C. § 1983 – First Amendment (as to the City); and  (28) intentional infliction of emotional distress (as to the City).  (*Id.* at ¶¶ 58-74.)

The City and Officer Gomez answered the FAC.  (Dkt. Nos. 69 & 70.)   The Regents and Dr. Tenner thereafter moved to dismiss the FAC, as did the State Defendants. (Dkt. Nos. 59 & 73.)  Plaintiff has also filed a document entitled Request for Judicial Notice of Adjudicative and Legislative Facts (may be treated as a Motion for Judgment as a Matter of Law) which the Regents and Dr. Tenner filed objections to.  (Dkt. Nos. 49, 58, 61.)

## LEGAL STANDARD

A Rule 12(b)(6) motion challenges the sufficiency of a complaint as failing to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A facial plausibility standard is not a "probability requirement" but mandates "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted).  For purposes of ruling

United States District Court
Northern District of California

on a Rule 12(b)(6) motion, the court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the non-moving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). "[D]ismissal may be based on either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Johnson v. Riverside Healthcare Sys.*, 534 F.3d 1116, 1121 (9th Cir. 2008) (internal quotation marks and citations omitted); *see also Neitzke v. Williams*, 490 U.S. 319, 326 (1989) ("Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law.").

Even under the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2), under which a party is only required to make "a short and plain statement of the claim showing that the pleader is entitled to relief," a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal,* 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555.) "[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *see also Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) ("[A]llegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively"). The court must be able to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663. "Determining whether a complaint states a plausible claim for relief ... [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 663–64.

If a Rule 12(b)(6) motion is granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotation marks and citations omitted).

Pro se pleadings are generally liberally construed and held to a less stringent standard. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In *Hebbe v. Pliler*, 627 F.3d 338 (9th Cir. 2010), the Ninth Circuit held that courts must still liberally construe pro se filings post-*Iqbal* noting that "[w]hile the standard is higher, our obligation remains, where the petitioner is pro se, particularly

United States District Court
Northern District of California

in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt." *Id*. at 342 (internal quotations and citations omitted).  Nevertheless, the Court may not "supply essential elements of the claim that were not initially pled." *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

## DISCUSSION

The gravamen of Plaintiff's 78-page FAC is that following his self-admission to the Hospital he was subjected to physical violence, false imprisonment, and administration of unwanted and unneeded psychotropic drugs in reprisal for whistleblower activities he engaged in as a labor representative for mental health clinicians in Contra Costa County, and that his medical records regarding the same were willfully falsified.  There are three categories of defendants named in the FAC; two of which have moved to dismiss on separate grounds as set forth below.

## I.        The State Defendants' Motion to Dismiss

Plaintiff has pled three claims for relief against the State Defendants.  The basis of his complaint with respect to these defendants is that in their capacity as "the primary enforcers of the laws applicable to [his] allegations" regarding the LPS that they violated his Fourth and Fourteenth Amendment rights through (1) his involuntary detention on August 8, 2015, and (2) the rejection of his subsequent complaints.  (FAC ¶¶ 68, 70.)   Plaintiff seeks a declaration that LPS is unconstitutional, as well as injunctive relief prohibiting involuntary detentions and forced administration of psychotropic drugs under the LPS and damages.  (FAC at ¶¶ 58-74, 239, 241.)

The State Defendants move to dismiss Plaintiff's claims under two alternative theories.[4] First, Defendants contend that they are immune from suit under the Eleventh Amendment, and second, that Plaintiff's claims fail to state a claim.  Because the immunity argument is dispositive, the Court does not consider whether Plaintiff has adequately pled his claims as to the State Defendants.

---

[4] Defendants move to dismiss under both Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). The Court construes this motion as exclusively a motion to dismiss under Rule 12(b)(6). A dismissal based on Eleventh Amendment immunity should be analyzed under Rule 12(b)(6) and not as a jurisdictional issue under Rule 12(b)(1). *See Steshenko v. Gayrard*, No. 13–CV–03400, 2014 WL 2120837, at *n.1 (N.D.Cal. May 20, 2014); *see also Elwood v. Drescher*, 456 F.3d 943, 949 (9th Cir. 2006) (stating that "dismissal based on Eleventh Amendment immunity is not a dismissal for lack of subject matter jurisdiction, but instead rests on an affirmative defense.") (internal quotation marks and citation omitted).

United States District Court
Northern District of California

**A.  Eleventh Amendment Immunity**

The Eleventh Amendment bars suits against States and state agencies in federal courts where the State has not waived its immunity.  *Carmen v. San Francisco Unified Sch. Dist.*, 982 F. Supp. 1396, 1402 (N.D. Cal. 1997) *aff'd*, 237 F. 3d 1026 (9th Cir. 2001) (internal citations omitted).  The State of California has not waived its immunity from Section 1983 lawsuits.[5] *Dittman v. California*, 191 F.3d 1020, 1025-26 (9th Cir. 1999).  The Eleventh Amendment bars suits against state agencies, as well as those where the state itself is named as a defendant.  *See P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc*., 506 U.S. 139, 144 (1993).  In addition, a plaintiff's suit "against state officials in their official capacities" is treated "as a suit against the state of California."  *Holley v. California Dep't Of Corr*., 599 F.3d 1108, 1111 (9th Cir. 2010).  "[A] suit "against state officials that is in fact a suit against a State is barred regardless of whether it seeks damages or injunctive relief."  *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 102 (1984).   The Eleventh Amendment "does not, however, bar actions for prospective declaratory or injunctive relief against state officers in their official capacities for their alleged violations of federal law."  *Coal. to Defend Affirmative Action v. Brown*, 674 F.3d 1128, 1134 (9th Cir. 2012) (citing *Ex Parte Young*, 209 U.S. 123, 155-56 (1908)).

**1)  Plaintiff's Claims Against the Medical Board of California**

The Medical Board of California is a "state agency" for purposes of sovereign immunity. *See Forster v. Cty. of Santa Barbara*, 896 F.2d 1146, 1149 (9th Cir. 1990).  Because the Board has not consented to suit, Plaintiff cannot maintain a suit against the Board.  *Yoonessi v. Albany Med. Ctr*., 352 F. Supp. 2d 1096, 1104 (C.D. Cal. 2005).  In his opposition brief, Plaintiff contends that his claims are not against the Medical Board, but instead, against "its constituent members in their official capacities," but this is not how the claim was pled.  *Compare* Dkt. No. 86 at 6:11 *with* Dkt. No. 46 at ¶ 20.  Although the FAC alleges that the Medical Board is "sued as to its constituent members in their official capacities as the State of California's primary enforcer of health-related laws and interpreting laws as they should apply with medical licensees," Plaintiff

---

[5] Plaintiff's first through third claims for relief all allege violation of his constitutional rights; specifically, his rights under the Fourth and Fourteenth Amendments.  However, Plaintiff cannot state a claim directly based on the Constitution, and instead, must utilize 42 U.S.C. § 1983.  *See Azul-Pacifico, Inc. v. City of Los Angeles*, 973 F.2d 704, 705 (9th Cir. 1992).

United States District Court
Northern District of California

has not named the members of the Medical Board as Defendants and did not serve the members, but rather the Medical Board itself with the summons.  (*Id.*; Dkt. No. 5.)  Nor has Plaintiff alleged facts which would give rise to a claim against any individual member of the Medical Board; instead, he alleges that the Board's "decision with respect to complaints establish how the laws implicated therein are to be implemented, administered, and enforced" and that the Medical Board creates policy through interpreting laws, rules, and regulations."  (Dkt. No. 46 at 20.)  Plaintiff's claims against the Board are thus barred by the Eleventh Amendment.

### 2) Plaintiff's Claims Against Attorney General Becerra and Director Smith

Eleventh Amendment sovereign immunity likewise applies to Plaintiff's federal claims against Attorney General Becerra and Director Smith.  Plaintiff argues that his claims are nonetheless maintainable under the *Ex Parte Young* doctrine.  *Ex Parte Young* provides an exception to a state official's immunity "where the relief sought is prospective in nature and is based on an ongoing violation of the plaintiff's federal constitutional or statutory rights."  *Krainski v. Neveda ex rel. Bd. of Regents of Nevada Sys. of Higher Educ.*, 616 F.3d 963, 967-68 (9th Cir. 2010) (internal citation and quotation marks omitted); *see also Papasan v. Allain*, 478 U.S. 265, 277–78 (1986). While claims against an official for prospective relief are generally cognizable, claims for retrospective relief are not.  *See Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 943 (9th Cir. 2013).  The Eleventh Amendment bars claims based on past violations of the law.  *See Green v. Mansour*, 474 U.S. 64, 73 (1985).

To determine whether *Ex Parte Young* applies, a court "need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective."  *Verizon Maryland, Inc. v. Public Service Com'n of Maryland*, 535 U.S. 635, 645 (2002).  In addition, the official sued must have some connection to the enforcement of the allegedly unconstitutional act.  *Coal. to Defend Affirmative Action*,  674 F.3d at 1134.  This connection "must be fairly direct; a generalized duty to enforce state law or general supervisory power over the persons responsible for enforcing the challenged provision will not subject an official to suit."  *Id.* (internal citation and quotation marks omitted).  Here, Plaintiff has not shown either that the relief he seeks is prospective or that Attorney General

United States District Court
Northern District of California

Becerra and Director Smith had any direct involvement in the enforcement of the allegedly unconstitutional act.

First, the FAC is replete with allegations regarding his involuntary detention, forced medication, and the deficiencies in his complaint review process. (FAC ¶¶ 10-11, 27-48, 62-66, 69.) These allegations relate to previous harms and not prospective relief. Although Plaintiff characterizes this relief as prospective, he also seeks redress for alleged past constitutional violations including damages. "[W]e consider declaratory relief retrospective to the extent that it is intertwined with a claim for monetary damages that requires us to declare whether a past constitutional violation occurred. In such a situation, however, declaratory relief is 'superfluous in light of the damages claim.'" *Nat'l Audubon Soc'y, Inc. v. Davis*, 307 F.3d 835, 848 n.5 (9th Cir.), opinion amended on denial of reh'g, 312 F.3d 416 (9th Cir. 2002) (quoting *People for the Ethical Treatment of Animals v. Rasmussen*, 298 F.3d 1198, 1202 n.2 (10th Cir. 2002). There is also no threat of continuing violation to Plaintiff which would be remedied through injunctive relief as he now lives in Texas. *Green*, 474 U.S. at 71.

Second, the FAC contains no factual allegations from which the Court could plausibly conclude that Attorney General Becerra or Department of Public Health Director Smith have a "fairly direct" connection with the enforcement of the LPS. The FAC alleges that Becerra "prosecute[s] violations of state law" and is "the chief advisor[] to the [Medical Board of California] in the handling of consumer complaints against medical licensees, and thereby enforcing and interpreting health-related laws as a matter of state policy." (FAC ¶ 21.) Smith is alleged to be "the State of California's primary enforcer of health-related laws and interpreter of laws as they should apply to facility licensees" and the Department of Public Health "with Smith at its helm, creates policy through interpreting laws, rules, and regulations through investigating and handling consumer complaints and issuing decisions in connection therewith." (Id. at ¶ 20.) Plaintiff alleges that both Smith and Becerra are the "primary enforcers of the laws applicable to the allegations" "because their decisions to enforce or refuse to enforce any provision of law, rules, and/or regulations governing the standards of care for patients admitted to healthcare facilities clarifies laws, rules, and regulations, and creates state policy." (*Id*. at ¶ 68.) Plaintiff's

1    allegations are insufficient.  Even if the Attorney General is the chief legal officer of California

2    and the Director of the Department of Public Health has "control over" the Department of Public

3    Health, their connection to enforcement of the LPS cannot be characterized as "fairly direct."

4        The Attorney General is entitled to Eleventh Amendment immunity unless the challenged

5    statute "expressly authorize[d] enforcement of the statute by district attorneys and city attorneys."

6    *Harris*, 729 F.3d at 942; *see also Bolbol v. Brown*, 120 F. Supp. 3d 1010, 1019 (N.D. Cal. 2015)

7    (concluding that claims against the Attorney General were barred under the Eleventh Amendment

8    because the statute at issue did not "empower district attorneys to enforce the law, and accordingly

9    the Attorney General's enforcement power [wa]s limited to her general duty to enforce California

10   law.").  To determine whether the *Ex Parte Young* exception applies, the Court must consider the

11   Attorney General's enforcement authority in the context of plaintiff's injury alleged to arise

12   therefrom.  *See Long v. Van de Kamp*, 961 F.2d 151, 152 (9th Cir. 1992) ("Absent a real

13   likelihood that the state official will employ [her] supervisory powers against plaintiffs' interests,

14   the Eleventh Amendment bars federal court jurisdiction."). The same is true with respect to the

15   Director of the Department of Public Health.  *See* Cal. H & S Code § 131005(b).  Here, Plaintiff

16   has not pled, nor is the Court persuaded that he could plead, a direct involvement on the part of

17   either the Attorney General or the Director of the California Department of Public Health with

18   enforcement of the LPS statute or complaints arising therefrom.

19       Accordingly, Plaintiff's claims against the Attorney General and the Director of the

20   California Department of Public Health are barred by the Eleventh Amendment.  The State

21   Defendants' motion to dismiss is granted.

22   **II.      The Regents and Dr. Tenner's Motion to Dismiss**

23       Plaintiff has pled 14 claims for relief against the University of California Regents and Dr.

24   Tenner (referred to hereafter collectively as "Defendants").  Defendants contend that each of these

25   claims is subject to dismissal.  First, Defendants contend that Plaintiff's Section 1983 claims

26   against the Regents and Dr. Tenner in her official capacity are barred by the Eleventh

27   Amendment, and that Dr. Tenner is entitled to qualified immunity to the extent that she is sued in

28   her individual capacity.  Second, Defendants argue that Plaintiff's negligence claims are barred by

United States District Court
Northern District of California

11

United States District Court
Northern District of California

1  the statute of limitations.  Finally, Defendants assert that Plaintiff's remaining claims fail to state a

2  claim upon which relief can be granted.  The Court addresses each argument in turn.

3         **A.  Plaintiff's Section 1983 Claims**
              **1) Plaintiff's Section 1983 Claim under the Fourth,**
4                   **Eighth, and Fourteenth Amendments**

5         Defendants move to dismiss Plaintiff's fourteenth claim for relief under Section 1983

6  as barred by the Eleventh Amendment.  The Regents, like the State Defendants, are not "persons"

7  subject to suit under Section 1983.  *See Armstrong v. Meyers*, 964 F.2d 948, 949 (9th Cir. 1992)

8  ("The Regents, a corporation created by the California constitution, is an arm of the state for

9  Eleventh Amendment purposes, and therefore is not a 'person' within the meaning of section

10  1983."); *Associated Students of University of California at Santa Barbara v. Regents of University*

11  *of California*, 2007 WL 196747, at *3 (N.D. Cal. Jan. 23, 2007) (finding that the Regents are

12  immune from suit under 42 U.S.C. § 1983 because they are not "persons" within the meaning of

13  the statute).  Plaintiff's claim against the Regents and Dr. Tenner in her official capacity are

14  therefore subject to dismissal.  Plaintiff concedes as much and clarifies that he only intended to

15  name Dr. Tenner in her individual capacity.  Defendants respond that the suit fails even if so

16  limited because Dr. Tenner is entitled to qualified immunity.

17         A government official is entitled to qualified immunity from civil damages unless her

18  conduct violates "clearly established statutory or constitutional rights of which a reasonable person

19  would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  In considering a claim of

20  qualified immunity, the court engages in a two-part inquiry: whether the facts "make out a

21  violation of a constitutional right"; and "whether the right at issue was 'clearly established' at the

22  time of defendant's alleged misconduct." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).

23  Qualified immunity, which is an affirmative defense, is most frequently raised in the context of a

24  motion for summary judgment, although it can also be raised at the motion to dismiss stage.  *See*

25  *Kwai Fun Wong v. United States*, 373 F.3d 952, 957 (9th Cir. 2004); *Groten v. California*, 251

26  F.3d 844, 851 (9th Cir. 2001). When the defense is raised in a motion to dismiss, the court must

27  decide "whether the facts alleged in the complaint, assumed to be true, yield the conclusion that

28  the defendant is entitled to immunity." *Butler v. San Diego District Attorneys Office*, 370 F.3d

956, 962-63 (9th Cir. 2004).

Here, Plaintiff alleges violation of his fourth, eighth, and fourteenth amendment rights; namely, that "detention and confiscation of his personal effects constituted a de facto violation" of his Fourth and Fourteenth Amendment rights to be free from unreasonable search and to due process and equal protection of the law.  (FAC at ¶ 134.)  He also alleges that his "detention and the forced administration of psychotropic drugs" violated his constitutional rights including his Eighth Amendment rights.  (*Id*. at ¶¶ 136 138.)  Further, "[b]y creating a medical record that implied a psychiatric detention while averring that the detention was under some other elusive statutory discretion other than the LPS which Plaintiff alleges to not exist or to otherwise violate the public's 4th and 14th Amendment rights by their depriving him of the basis for that statutory discretion" Defendants violated his right to security in his person and personal effects, due process, and equal protection under the law.  (*Id*. at ¶ 134.)

Dr. Tenner has not shown that Plaintiff's allegations, which the Court must accept as true, do not as a matter of law establish a violation of the clearly established constitutional right to be free from forced medication with psychotropic drugs.  *See Washington v. Harper*, 494 U.S. 210, 229 (1990)("The forcible injection of medication into a nonconsenting person's body represents a substantial interference with that person's liberty.").  While Plaintiff's liberty interest "must be balance[ed] against competing state interests," Plaintiff does not allege any facts to support any such competing state interests. *Youngberg v. Romeo*, 457 U.S. 307, 320 (1982).  Instead, Dr. Tenner's argument is premised on viewing the allegations in the light most favorable to Dr. Tenner. The Court thus cannot conclude at this time that Dr. Tenner is entitled to qualified immunity as a matter of law.  Accordingly, Dr. Tenner's claim of qualified immunity to Plaintiff's fourteenth claim for relief is denied without prejudice to renewal in a motion for summary judgment after factual discovery.

### 2) Plaintiff's Section 1983 Claim based on the First Amendment

Plaintiff also pleads a Section 1983 claim in his fifteenth claim for relief for violation of his First Amendment rights.  This claim is based on the allegation that Dr. Tenner's conduct was done with "an intent to reprise against Plaintiff for activities in which he was engaged as a labor

representative for the mental health clinicians of Contra Costa County" and because she knew that he was under criminal investigation.  (*Id*. at ¶ 143.)

    To prove retaliation in violation of the First Amendment and to recover under 42 U.S.C. § 1983, a plaintiff must show:

> (1) [that] he engaged in constitutionally protected activity; (2) as a result, he was subjected to adverse action by the defendant that would chill a person of ordinary firmness from continuing to engage in the protected activity; and (3) there was a substantial causal relationship between the constitutionally protected activity and the adverse action.

*Blair v. Bethel Sch. Dist*., 608 F.3d 540, 543 (9th Cir. 2010).  Plaintiff's conclusory allegation that Dr. Tenner's actions towards him were in retaliation for his unspecified First Amendment activities as a labor representative are insufficient to state a claim for retaliation in violation of the First Amendment.  Plaintiff has not sufficiently alleged what constitutionally protected activity he was engaged in or any causal relationship between such activity and the treatment provided by Dr. Tenner.  Nor can the Court glean any plausible connection between Plaintiff's work in Contra Costa County and the emergency room treatment he received in a hospital in San Francisco.  *See, e.g.*, *Adams v. Kraft*, No. 10-CV-00602-LHK, 2011 WL 846065, at *5 (N.D. Cal. Mar. 8, 2011) ("Plaintiff fails to provide even circumstantial allegations that there was a substantial relationship between Plaintiff's criticism and Defendants' alleged conduct.")

    Accordingly, Plaintiff's fifteenth claim for relief under Section 1983 for violation of his First Amendment rights is dismissed.

**B. Plaintiff's Negligence Claims**

    Plaintiff has alleged three different claims for negligence against Dr. Tenner: (1) medical negligence (fourth claim); (2) medical negligence – medical malpractice (fifth claim); and (3) failure to obtain informed consent – medical malpractice (sixth claim) plus a claim for vicarious liability (thirteenth claim) as to the Regents.[6]  Defendants contend that these claims are duplicative and should be pled as one claim for medical negligence. Plaintiff responds that they are

---

[6] Defendants argue that the vicarious liability claim fails for the same reason as the underlying negligence claim, but do not otherwise move to dismiss the thirteenth claim for relief under California Government Code Section 815.2.

United States District Court
Northern District of California

"inherently separate causes of action, relying on separate elements of proof."  (Dkt. No. 62 at 21:1.)  Defendants are correct that Plaintiff's medical negligence and medical negligence-medical malpractice claims (the fourth and fifth claims) are one in the same.  *See Flowers v. Torrance Mem'l Hosp. Med. Ctr.*, 8 Cal.4th 992, 995 (1994) (negligence asserted against a health care provider cannot be brought as two separate claims of general negligence and professional negligence).  However, general medical negligence and negligence predicated on failure to obtain informed consent require different elements of proof and thus are properly pled separately.  *Compare Gami v. Mullikin Med. Ctr.*, 18 Cal.App. 4th 870, 877 (1993) (stating the elements of a medical negligence claim) *with Cobbs v. Grant*, 8 Cal.3d 229, 245 (Cal. 1972) (stating the elements of a medical malpractice claim based on failure to obtain informed consent).

### 1)  Plaintiff's Negligence Claims are Time-Barred

Defendants contend as a threshold matter that Plaintiff's negligence claims are barred by the statute of limitations.  "In an action for injury or death against a health care provider based upon such person's alleged professional negligence, the time for the commencement of action shall be three years after the date of injury or one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the injury, whichever occurs first."  Cal. Civ. Proc. Code § 340.5.  A "patient is charged with presumptive knowledge of his negligent injury, and the statute commences to run, once he has notice or information of circumstances to put a reasonable person on inquiry, or has the opportunity to obtain knowledge from sources open to his investigation." *Artal v. Allen*, 111 Cal.App.4th 273, 279 (2003) (internal citation, quotation marks, and emphasis omitted).  Additionally, a "plaintiff whose complaint shows on its face that [the] claim would be barred without the benefit of the discovery rule must specifically plead facts to show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence." *Eidson v. Medtronic, Inc.*, No. 13–CV–02049, 2014 WL 1996024, at *9 (N.D. Cal. May 13, 2014) (internal quotation marks and emphasis omitted) (quoting *Fox v. Ethicon Endo–Surgery, Inc.*, 35 Cal.4th 797, 807 (2005)).

Plaintiff's complaint was filed October 26, 2016 more than one year after his August 2015 treatment at the Hospital.  Defendants contend that Plaintiff's action is time-barred because

15

1   Plaintiff knew or should have known about the alleged negligence, at the latest, by the time he

2   filed his complaint with the Medical Board regarding Dr. Tenner which was in "late September or

3   early October 2015."  (FAC at ¶ 36.)  In response, Plaintiff argues that although he knew from the

4   start that his medical records contained false information, he did not know of Dr. Tenner's

5   negligence until he knew the legal basis for his detention.  Plaintiff also suggests that he needed to

6   "verify[] his recollection" to avoid "filing a frivolous suit" and this process was impeded given

7   that he had been administered psychotropic drugs.  (Dkt. No. 62 at 12:11-12.)  Finally, Plaintiff

8   contends that the delay in production of his medical record justified his delay in filing suit.  Not

9   so.

10      "A plaintiff need not be aware of the specific 'facts' necessary to establish the claim; that

11  is a process contemplated by pretrial discovery. Once the plaintiff has a suspicion of wrongdoing,

12  and therefore an incentive to sue, she must decide whether to file suit or sit on her rights. So long

13  as a suspicion exists, it is clear that the plaintiff must go find the facts; she cannot wait for the

14  facts to find her." *Jolly v. Eli Lilly & Co*., 44 Cal. 3d 1103, 1111 (1988); *see also Massey v. Mercy*

15  *Med. Ctr. Redding*, 180 Cal. App. 4th 690, 699 (2009) ("the limitations period begins to run, not

16  when medical records are obtained, but when one suspects, or reasonably should suspect, that he

17  has been injured in some wrongful way (i.e., the fall, for which the morphine was given).").  Here,

18  Plaintiff filed numerous document requests with various agencies days after his release on August

19  9, 2015.  He received responses to these document requests within weeks at which point he

20  determined that he had sufficient information to file a claim against Dr. Tenner with the Medical

21  Board of California, which he did by his own admission in late September or early October 2015.

22  Plaintiff nonetheless waited more than a year after that to file this action.  "[W]hen the patient's

23  reasonably founded suspicions have been aroused, and she has actually become alerted to the

24  necessity for investigation and pursuit of her remedies, the one-year period for suit begins."  *Artal*,

25  111 Cal. App. 4th at 279 (internal quotation marks and citation omitted).  Plaintiff's reasonably

26  founded suspicions formed at the latest when he filed his complaint against Dr. Tenner with the

27  Medical Board. Because his complaint's allegations state that this was more than one year prior to

28  the filing of this action, his claim for medical negligence is barred by the one-year statute of

United States District Court
Northern District of California

16

United States District Court
Northern District of California

1   limitations.

2   **2) Tolling of the Statute of Limitations**

3        Plaintiff argues that even if his action is barred by the statute of limitations, the late filing

4   is excused because (1) Defendants engaged in fraud and concealment of the facts which gave rise

5   to his medical malpractice claim, (2) he is entitled to tolling under California Government Code

6   Section 855.2, (3) equitable estoppel applies, and (4) the statute of limitation should be equitably

7   tolled.  The first three arguments are unavailing.  The one-year statute of limitations under Section

8   340.5 is not extended based on allegations of fraud: "regardless of extenuating circumstances, the

9   patient must bring ... suit within one year after he or she discovers, or should have discovered,

10   [the] 'injury.' " *Artal*, 111 Cal. App. 4th at 278 (citing *Sanchez v. S. Hoover Hosp*., 18 Cal. 3d 93,

11   100-01 (1976)).  Likewise, California Government Code section 855.2 does not and cannot apply

12   as it addresses the rights of "an inmate of a medical facility."  Plaintiff does not allege he was an

13   inmate.  Nor are Defendants equitably estopped from raising a statute of limitations issue based on

14   their alleged failure to respond to Plaintiff's September 2, 2015 grievance.  Equitable estoppel

15   applies to toll a statute of limitations "when a plaintiff who knows of his cause of action

16   reasonably relies on the defendant's statements or conduct in failing to bring suit."  *Stitt v.*

17   *Williams*, 919 F.2d 516, 522 (9th Cir. 1990).  No such reliance is alleged here.

18        Plaintiff has also not sufficiently alleged equitable tolling.  Equitable tolling applies where

19   the plaintiff is pursuing an alternative remedy.  *See Thomas v. Gilliland*, 95 Cal. App. 4th 427, 434

20   (2002) ("The doctrine of equitable tolling, however, only applies where the plaintiff has alternate

21   remedies and has acted in good faith."); *Donoghue v. Orange Cty*., 848 F.2d 926, 930 (9th Cir.

22   1987) (noting that under California's equitable tolling rules the prior pursuit of a remedy may toll

23   the state statute of limitations when a person has "several formal legal remedies and reasonably

24   and in good faith pursues one.").  Thus, tolling applies where the record demonstrates "(1) timely

25   notice to the defendant in filing the first claim; (2) lack of prejudice to defendant in gathering

26   evidence to defend against the second claim; and (3) good faith and reasonable conduct by the

27   plaintiff in filing the second claim." *Collier v. City of Pasadena*, 142 Cal.App.3d 917, 924 (1983).

28        Plaintiff argues that his administrative claims to the City and County of San Francisco

1   equitably tolled his claims and that he did not know that the claim should be directed to the

2   Regents until April 26, 2016.  (FAC at ¶ 24.)  Plaintiff, however, does not cite any case that

3   suggests that equitable tolling applies when a plaintiff pursues the wrong defendants, or as here,

4   the wrong entity on behalf of a known defendant.  In other words, where the relief pursued is *not*

5   an alternative remedy. Further, notwithstanding Plaintiff's assertions to the contrary, Plaintiff's

6   complaint does not allege any facts that plausibly suggest that "a grievance to the SFGH is both a

7   grievance to the CCSF and to the UC Regents." (Dkt. No. 62 at 15:20-22.)  Plaintiff relies on

8   "Defendant's affiliation agreement," which he attaches to his request for judicial notice, but the

9   document is not judiciably noticeable.[7]

10      Accordingly, Plaintiff's fifth and sixth claims for relief are dismissed with leave to amend

11   to plead facts which plausibly suggest Plaintiff's entitlement to tolling.

12      **C. Plaintiff's Intentional Tort Claims**

13      Plaintiff's intentional tort claims are based on the premise that Dr. Tenner restrained

14   Plaintiff and forcibly injected him with psychotropic drugs. (FAC at ¶¶ 95, 101, 106.)  Defendants

15   move to dismiss these claims for failure to state a claim.

16      **1) Battery/Assault**

17      The elements of a civil battery are: (1) defendant intentionally did an act which resulted in

18   a harmful or offensive contact with the plaintiff's person; (2) plaintiff did not consent to the

19   contact; and (3) the harmful or offensive contact caused injury, damage, loss or harm to the

20   plaintiff.  *See Brown v. Ransweiler*, 171 Cal.App.4th 516, 526–27 (2009).  "A typical medical

21   battery case is where a patient has consented to a particular treatment, but the doctor performs a

22   treatment that goes beyond the consent." *Conte v. Girard Orthopaedic Surgeons Medical Group*,

23

24   [7] Pursuant to Federal Rule of Evidence 201, "[a] judicially noticed fact must be one not subject to
reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the
25   trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy
cannot reasonably be questioned."  Plaintiff's request for Judicial Notice is DENIED as it does
26   not seek judicial notice of matters subject to judicial notice.  (Dkt. Nos. 49 & 61.)  Likewise, to the
extent that Plaintiff frames his Request for Judicial Notice in the alternative as a Motion for
27   Judgment as a Matter of Law it is also improper as a such motions are governed by Federal Rule
of Civil Procedure 50(a) and are proper once "a party has been fully heard on an issue during a
28   jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary
basis to find for the party on that issue."  Fed. R. Civ. P. 50(a).

United States District Court
Northern District of California

1  Inc., 107 Cal.App.4th 1260, 1267 (2003). "Where a doctor obtains consent of the patient to

2  perform one type of treatment and subsequently performs a substantially different treatment for

3  which consent was not obtained, there is a clear case of battery." *Cobbs v. Grant*, 8 Cal.3d 229,

4  239 (1972).  A patient is considered to have consented to a touching that, while not literally

5  covered by the patient's express consent, involves complications inherent to the procedure.

6  *Kaplan v. Mamelak*, 162 Cal.App.4th 637, 646 (2008). "The battery theory should be reserved for

7  those circumstances when a doctor performs an operation to which the patient has not consented.

8  When the patient gives permission to perform one type of treatment and the doctor performs

9  another, the requisite element of deliberate intent to deviate from the consent is present." *Moran v.*

10  *Selig*, 447 F.3d 748, 758 (9th Cir. 2006) (quoting *Cobbs*, 8 Cal.3d at 240);  *Saxena v. Goffney*, 159

11  Cal.App.4th 316, 324 (2008) ("A claim based on lack of informed consent-which sounds in

12  negligence-arises when the doctor performs a procedure without first adequately disclosing the

13  risks and alternatives. In contrast, a battery is an intentional tort that occurs when a doctor

14  performs a procedure without obtaining any consent.").

15  　　　Thus, courts typically apply a negligence theory in cases in which the defendant has

16  "performed the identical operation to which plaintiff had consented" but is alleged to have failed

17  to have informed the plaintiff of all the other options and inherent risks of the procedure.  *Cobbs*, 8

18  Cal.3d at 241.   A claim for medical malpractice based on a failure to obtain informed consent

19  requires (1) performance of medical procedure on plaintiff; (2) that plaintiff did not give informed

20  consent; (3) reasonable person would not have consented to medical procedure if he had been fully

21  informed of the results and risks of the medical procedure; and (4) that plaintiff was harmed by

22  result or risk that should have been explained before the medical procedure was performed.  *See*

23  *Cobbs v. Grant*, 8 Cal.3d 229, 245 (Cal. 1972).

24  　　　Plaintiff's claims here sound in medical negligence not battery.  Plaintiff presented to the

25  emergency room seeking medical treatment due to an unspecified allergic reaction that he was

26  having to an unspecified medication.  In doing so, he consented to treatment—his arguments

27  regarding the treatment that he received in response to his presentation in the emergency room go

28  to the scope of his consent and the propriety of the medical response to his condition.  These

United States District Court
Northern District of California

1   claims are based on a theory of medical malpractice not intentional tort.   *Daum v. SpineCare Med.*

2   *Grp., Inc*., 52 Cal. App. 4th 1285, 1313 (1997).

3          Plaintiff's assault claim is even less plausible.  The elements of an assault claim under

4   California law are: (1) the defendant threatened to touch him in a harmful or offensive manner; (2)

5   it reasonably appeared to the plaintiff that the defendant was about to carry out the threat; (3) the

6   plaintiff did not consent to the conduct; (4) the plaintiff was harmed; and (5) the defendant's

7   conduct was a substantial factor in causing the harm. *Tekle v. U.S*., 511 F.3d 839, 855 (9th Cir.

8   2007).  Plaintiff's allegation that Dr. Tenner acted with "intent to cause physical or emotional

9   injury to plaintiff" is inadequate to state a claim for assault (FAC at ¶ 109).  *See Starr v. Baca*, 652

10  F.3d 1202, 1216 (9th Cir. 2011) ("allegations in a complaint... may not simply recite the elements

11  of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice

12  and to enable the opposing party to defend itself effectively" and "must plausibly suggest an

13  entitlement to relief").

14         Accordingly, Plaintiff's seventh, eighth, and ninth claims for relief based on battery and

15  assault are dismissed.

16                          **2) False Imprisonment/Unlawful Arrest**

17         Under California law, false imprisonment is the "unlawful violation of the personal liberty

18  of another." *Asgari v. City of Los Angeles*, 15 Cal. 4th 744, 757 (1997). The elements of false

19  imprisonment are: "(1) the nonconsensual, intentional confinement of a person, (2) without lawful

20  privilege, and (3) for an appreciable period of time, however brief." *Easton v. Sutter Coast*

21  *Hospital*, 80 Cal. App. 4th 484, 496 (2000) (internal citation omitted).  The confinement must be

22  "without lawful privilege."  *Molko v. Holy Spirit Assn*., 46 Cal. 3d 1092, 1123 (1988).  Thus, in

23  order to bring a claim for false imprisonment, Plaintiff must first show that his imprisonment was

24  unlawful.

25         Here, Plaintiff alleges that Dr. Tenner "intentionally deprived Plaintiff of his freedom of

26  movement by use of physical restraints" compelled him to remain at the Hospital "against his

27  will," because any consent was "effectively withdraw the moment his admission involved the use

28  of physical and chemical restraints."  (FAC at ¶ 113.) As with his claims for assault and battery,

1    Plaintiff's claims regarding Dr. Tenner's use of restraints and forcible medication lie in

2    negligence—Plaintiff presented to the Hospital with a medical condition, that he takes issue with

3    the treatment he received is a medical negligence claim not an intentional tort claim.

4         Accordingly, Plaintiff's tenth claim for relief for false imprisonment is dismissed.

5                    **3) Intentional Infliction of Emotional Distress**

6         The elements of intentional infliction of emotional distress under California law are: (1)

7    extreme and outrageous conduct by the defendant with the intention of causing, or reckless

8    disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or

9    extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the

10   defendant's outrageous conduct.  *Corales v. Bennett*, 567 F.3d 554, 571 (9th Cir. 2009) (internal

11   citation omitted).  Conduct is outrageous if it is so extreme as to exceed all bounds of that usually

12   tolerated in a civilized community.  *Id*. at 571.

13        Here, Plaintiff alleges that Dr. Tenner's conduct was "outside the limitations of law and

14   constitutional rights" and that a reasonable person would find the conduct "more than a mere

15   annoyance, personal offence, or insult, indeed so outrageous and so injurious, such as to constitute

16   intentional infliction of emotional distress."   (FAC at ¶¶ 126, 129.)  Plaintiff's conclusory

17   allegations fail to allege any intentional conduct on the part of Dr. Tenner which was so extreme

18   and outrageous to have caused Plaintiff severe or extreme emotional distress.  *See, e.g.*, *Chipman*

19   *v. Nelson*, 2016 WL 4943843, at *11 (E.D. Cal. Sept. 15, 2016), report and recommendation

20   adopted, 2016 WL 5870765 (E.D. Cal. Oct. 7, 2016) ("Such conduct is akin to medical

21   malpractice and is not, as plaintiff in conclusory fashion suggests, tantamount to a violent attack or

22   other extreme and outrageous conduct.").

23        Plaintiff's twelfth claim for relief for intentional infliction of emotional distress is therefore

24   dismissed.

25                 **D. Plaintiff's Creation of a False Record Claim**

26        Plaintiff's eleventh claim for relief for "creating false medical records" appears to be based

27   on the statutes surrounding 5150 holds, *see, e.g*., Cal. Welf. & Inst. Code § 5150.05(c), § 5326.9;

28   however, as Plaintiff concedes, he was "not placed on a '5150 hold.'  (FAC at ¶ 121.)  As Plaintiff

United States District Court
Northern District of California

21

does not allege he was placed on a 5150 hold, the provisions regarding falsifying records under this section do not apply.  Plaintiff's eleventh claim for relief is therefore dismissed.

### E.  Plaintiff's Injunctive Relief Claim

In his opposition brief, Plaintiff voluntarily dismisses his first and third claims for relief as to Defendants Dr. Tenner and the Regents.  Plaintiff nonetheless maintains his second claim for relief for "injunctive relief" as to the Regents which he describes as an "arm of state."  However, this claim fails for the same reason it fails with respect to the State Defendants: the Regents are not a "person" under section 1983. *See Armstrong v. Meyers*, 964 F.2d 948, 949 (9th Cir. 1992) ("The Regents, a corporation created by the California constitution, is an arm of the state for Eleventh Amendment purposes, and therefore is not a 'person' within the meaning of section 1983."). Plaintiff cannot sue the Regents based upon his contention that the LPS Act is unconstitutional. Even if he could, attacks on the constitutionality of the Act have been rejected by the courts.  *See Thorn v. Superior Court*, 1 Cal.3d 666, 668 (1970) ("we have concluded that with suitable safeguards to protect the rights of such patients to counsel and to seek release on habeas corpus, the provisions of the act here in issue should be sustained"); *Doe v. Gallinot*, 657 F.2d 1017, 1025 (9th Cir.1981) (upholding district court ruling that "due process requires a probable cause hearing after the 72–hour emergency detention period for persons alleged to be gravely disabled").

Plaintiff's first, second and third claims for relief are therefore dismissed.

### CONCLUSION

For the reasons stated above, Defendants' motions to dismiss are GRANTED IN PART AND DENIED IN PART as follows:

1.  The State Defendants' motion to dismiss is GRANTED without leave to amend. Plaintiff's claims against the State Defendants are barred by the Eleventh Amendment.

2.  Dr. Tenner and the Regents' motion to dismiss is GRANTED as follows:

   a)  Plaintiff's first, second and third claims for relief are dismissed without leave to amend as barred by the Eleventh Amendment.

   b)  Plaintiff's fourth claim for relief as to general negligence is dismissed with prejudice as duplicative of Plaintiff's fifth claim for medical negligence.

c)  Plaintiff's fifth claim for relief for medical negligence, his sixth claim for relief for medical negligence—lack of informed consent, and the related thirteenth claim of vicarious liability as to the Regents, are dismissed as barred by the one-year statute of limitations with leave to amend to allege facts supporting tolling.  Should Plaintiff so amend his complaint, and should the Regents and Dr. Tenner again move to dismiss, the parties' papers should more robustly address whether filing a claim regarding Dr. Tenner with the City can, as a matter of law, toll the one-year statute of limitations.

d)  Plaintiff's intentional tort claims (his seventh, eighth, ninth, tenth, twelfth claims for relief ) are dismissed for failure to state a claim.  Plaintiff may amend his complaint in accordance with this Order if he has a good faith basis for alleging intentional conduct on the part of Dr. Tenner.

e)  Plaintiff's eleventh claim for relief for creating a false medical record is dismissed with prejudice as amendment would be futile given Plaintiff's admission as to the inapplicability of this statutory scheme.

f)  Plaintiffs' fourteenth claim for relief is dismissed without leave to amend as to the Regents and Dr. Tenner in her official capacity.

g)  Plaintiff's fifteenth claim for relief is dismissed without leave to amend as to the Regents and Dr. Tenner in her official capacity.  Plaintiff may amend this claim as to Dr. Tenner in her individual capacity if he has a good faith basis to do so consistent with this Order.

3.  Dr. Tenner and the Regents' motion to dismiss is DENIED follows:

a)  as to Plaintiff's fourteenth claim for relief as to Dr. Tenner in her individual capacity.

If Plaintiff intends to file a second amended complaint regarding the claims against Dr. Tenner and the Regents which were dismissed with leave to amend, **he must do so by March 31, 2017.  Plaintiff may not add any additional defendants or claims without first obtaining**

**permission from the Court.**

The parties shall appear for a Case Management Conference on May 11, 2017 at 1:30 p.m. in Courtroom F, 450 Golden Gate Ave., San Francisco, California.  A Joint Case Management Conference Statement is due May 4, 2017.

This Order disposes of Docket Nos. 49, 59 & 73.

**IT IS SO ORDERED.**

Dated: March 8, 2017

_Jacqueline Scott Corley_

JACQUELINE SCOTT CORLEY
United States Magistrate Judge

United States District Court
Northern District of California

24

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOEL JENNINGS WARNE,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>CITY AND COUNTY OF SAN<br>FRANCISCO, et al.,<br><br>　　　　　Defendants. | Case No.  16-cv-06773-JSC<br><br>**CERTIFICATE OF SERVICE** |

　　　　I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

　　　　That on March 8, 2017, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Joel Jennings Warne
20523 County Road 146
Tyler, TX 75703

Dated: March 8, 2017

　　　　　　　　　　　　　　　　Susan Y. Soong
　　　　　　　　　　　　　　　　Clerk, United States District Court

　　　　　　　　　　　　　　　　By: _____
　　　　　　　　　　　　　　　　Ada Means, Deputy Clerk to the
　　　　　　　　　　　　　　　　Honorable JACQUELINE SCOTT CORLEY

25