UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JOEL JENNINGS WARNE,

        Plaintiff,

    v.

CITY AND COUNTY OF SAN
FRANCISCO, et al.,

        Defendants.

Case No. 16-cv-06773-JSC

**ORDER RE: DEFENDANTS' MOTION TO DISMISS**

Re: Dkt. No. 115

      Plaintiff Joel Jennings Warne, proceeding pro se, alleges violations of his civil rights as well as claims under state law relating to medical treatment he received at San Francisco General Hospital in 2015. Defendants, the Regents of the University of California (the "Regents") and Dr. Andrea Tenner, M.D. ("Dr. Tenner"), collectively referred to herein as Defendants, have moved to dismiss Plaintiff's Second Amended Complaint ("SAC") for failure to state a claim. (Dkt. No. 115.) Defendants contend that Plaintiff fails to allege a single cause of action against the Regents and that the negligence claims against Dr. Tenner are barred by the statute of limitations and the intentional tort claims fail to state plausible grounds for recovery. (*Id.*) After carefully considering the papers filed by the parties, and having had the benefit of oral argument on June 16, 2017, Defendants' motion is GRANTED in part and DENIED in part.

## BACKGROUND

### A. Complaint Allegations

      Joel Warne voluntarily admitted himself to San Francisco General Hospital (the "Hospital") on August 8, 2015 after having an adverse reaction to a long-prescribed medication. (Dkt. No. 104 (Second Amended Complaint ("SAC")) ¶ 44.) Since filing his First Amended Complaint (Dkt. No. 46 (First Amended Complaint ("FAC")), Plaintiff has revised his allegation

that he was admitted to the Hospital to instead allege that he was brought there "with the power of suggestion" after being drugged, as part of a conspiracy against him. (*Id.* ¶ 73.) Plaintiff contends that his medication was "replaced or tampered with" as part of the conspiracy, which also included having his car vandalized multiple times, getting his driver's license revoked (*Id.* ¶ 5-10), and having his mail stolen. (*Id.* ¶ 82.) Plaintiff asserts that he was drugged and directed to the Hospital because the staff there, particularly Dr. Tenner, were involved in the conspiracy. (*Id.* ¶ 13.) He alleges that "there are as many as one thousand persons involved" in the conspiracy. (*Id.* ¶ 36.)

During his admission, Hospital staff treated Plaintiff "as though he was insignificant and worthless" and he felt as though he was being "'euthanize[d]'" (*Id.* ¶ 49-51). Plaintiff was never assigned to a room at the Hospital and never had an opportunity to speak with a physician in private. (*Id.* ¶ 50.) At the Hospital, Plaintiff was forcibly administered psychotropic drugs (*Id.* ¶ 1), he had blood withdrawn without his knowledge or consent (*Id.* ¶ 48.), was given "false guarantees as to his physical health," had his phone confiscated, was "physically forced" to sign documents without being permitted to read them, and was bound at the hands and feet. (*Id.* ¶ 49.) Plaintiff also remembers being interrogated while he was unconscious. (*Id.* ¶ 51.)

In particular, Dr. Tenner "treated Plaintiff with an atypical and noticeable roughness" (*Id.* ¶ 49), which included calling him an "idiot" and denying him transport to another facility. (*Id.*) When Plaintiff picked up the Hospital's telephone to call his mother, Dr. Tenner "ripped the phone out of Plaintiff's hand" three times. (*Id.*) Additionally, Plaintiff heard someone, which he suspects to be Dr. Tenner, say to him, "We're going to allow you to die and tell your mother that you overdosed on street drugs." (*Id.*) Plaintiff's recollections of his admission are incomplete, but have become "more vivid, broader, and more articulable over the months and more than a year since" his admission. (*Id.* ¶ 51.)

The morning after his admission, Plaintiff was awakened and told he could leave. (*Id.* ¶ 49.) Plaintiff does not remember getting home, but once there he slept for 48 hours. (*Id.*) Plaintiff has limited memory of the events that occurred between August 9 and 25, 2015. (*Id.* ¶ 52.) However, he does recall going to see his physician (Dr. Huang) on August 13, 2015 for a

rash, and speaking to his mother about a voicemail that she had received from the Hospital about Plaintiff on the night of his admission. (*Id.*)

On August 25, 2015, less than two weeks after the incident, Plaintiff filed requests for documents pertaining to himself with the San Francisco Sheriff's Department and the San Francisco District Attorney's Office. (*Id.* ¶ 53.) He also filed a complaint with the California Department of Public Health and filed a request for his medical records from the Hospital. (*Id.* ¶ 54.) On August 29, 2015, Plaintiff received the bill for services from the Hospital, which was dated August 25, 2015. (*Id.*) Plaintiff alleges that the bill was incomplete because the only medication he had been told he was being given, Ativan, was not included on the bill. (*Id.* ¶ 56-58.) Plaintiff contacted the Hospital's billing department and on September 18, 2015 was sent a revised, yet still incomplete bill. (*Id.*) Plaintiff has received a total of three different versions of the bill, which he refuses to pay because it remains incomplete. (*Id.*) Plaintiff is concerned about the drugs listed on the bills that were supposedly administered during his admission because of their dangerous side effects, which he has included great detail about this throughout his SAC. (*Id.* ¶ 59, 70, 202.)

On August 30, 2015, San Francisco Police Officer Seven Gomez came to Plaintiff's home to perform a "welfare check" during which he entered Plaintiff's apartment without consent and "aggressively" placed Plaintiff in handcuffs. (*Id.* ¶ 63.) As a result of this interaction, Plaintiff filed a complaint with the Office of Citizen Complaints. (*Id.* ¶ 66.)

A few days later, Plaintiff also sent a revised complaint to California Department of Public Health Facilities Evaluator Nurse Artemis Nuval and to the Hospital's patients' advocate. (*Id* ¶ 67.) The California Department of Public Health Facilities advised Plaintiff to file his complaint with the Medical Board of California as well, which Plaintiff did. (*Id* ¶ 94.) The following day, Plaintiff went to the Hospital to demand his medical records, at which time he received incomplete, incorrect, and unsigned documents. (*Id.* ¶ 69.)

In October, the San Francisco Department of Public Health responded to Plaintiff's complaint, denying that he was placed on a 5150 hold. (*Id.* ¶ 76.) That same month, the California Department of Public Health Facilities dismissed Plaintiff's complaint. (*Id.* ¶ 77-78.)

The Medical Board of California and the City and County of San Francisco ("CCSF") also dismissed claims from the Plaintiff. (*Id.* ¶ 84-85.) In November, Plaintiff went to the CCSF's Sunshine Ordinance Task Force to request the same records he had requested from the Department of Public Health and the Sheriff's Department. (*Id.* ¶ 79.) Though not pled in his FAC, Plaintiff now alleges that the CCSF responded to his request by publishing his inaccurate personal medical records on their public website, which were initially in unredacted form. (*Id.*) Plaintiff learned that this had happened in January or February of 2016 and subsequently filed an administrative claim on February 5, 2016. (*Id.*)

On July 7, 2016, Plaintiff filed a petition in the San Francisco Superior Court seeking surveillance footage from the Hospital and his medical record. (*Id* ¶ 87.) A month later the CCSF voluntarily produced Plaintiff's medical record. (*Id.*) The superior court subsequently ordered the CCSF to provide records to Plaintiff regarding the laws, rules, and regulations that apply to his detention at the Hospital. (*Id.* ¶ 88.) The CCSF responded that they did not have such documents; however, they did provide video surveillance footage in November. (*Id.*)

**B. Procedural Background**

On October 24, 2016, Plaintiff filed this action against the CCSF, the Regents, and Dr. Andrea Tenner, in the Superior Court for the County of San Francisco. (Dkt. No. 1-1.) Defendants answered the complaint and removed the action to this Court based on federal question jurisdiction. (Dkt. Nos. 1; 1-2.) Upon removal, the Regents and Dr. Tenner moved to dismiss. (Dkt. No. 12.) Prior to disposition of their motion to dismiss, Plaintiff filed his First Amended Complaint, which added claims against San Francisco Police Officer Steven Gomez, California Attorney General Kamala Harris, the Director of the California Department of Public Health Karen Smith, and the Medical Board of California. (Dkt. No. 46.)

The City and Officer Gomez answered the FAC. (Dkt. Nos. 69 & 70.) The Regents and Dr. Tenner thereafter moved to dismiss the FAC, as did the State Defendants. (Dkt. Nos. 59 & 73.)

The Court granted the motion to dismiss as to California Attorney General Kamala Harris, the Director of the California Department of Public Health Karen Smith, and the Medical Board of

1    California as barred by the Eleventh Amendment. (Dkt. No. 94.) The Court granted in part and

2    denied in part the motion to dismiss as to the Regents and Dr. Tenner. (*Id.*) The motion to

3    dismiss was denied as to Plaintiff's claim for relief under 42 U.S.C. § 1983 for violation of the

4    Fourth, Eighth, and Fourteenth Amendments, as to Dr. Tenner in her individual capacity. (*Id.* at

5    23.) The motion was granted as to Plaintiff's claim for medical negligence and vicarious liability

6    as to the Regents, with leave to amend to allege facts supporting tolling—specifically, whether

7    filing a claim regarding Dr. Tenner with the City can, as a matter of law, toll the one-year statute

8    of limitations. (*Id.* at 23[1].) Plaintiff was also given leave to amend his Section 1983 claim

9    predicated on violation of his First Amendment rights and his intentional tort claims to the extent

10   that he had a good faith basis for doing so. (*Id.*) The Court's Order cautioned Plaintiff that he

11   could not add claims or parties to his amended complaint without first obtaining permission to do

12   so. (*Id.* at 23-24.)

13          Plaintiff thereafter filed the now operative SAC which only includes claims as to Dr.

14   Tenner, Officer Gomez, and the CCSF. (Dkt. No.104.) The SAC is 131 pages long and asserts 21

15   claims for relief: (1) medical negligence (as to Dr. Tenner in her personal capacity); (2) simple

16   battery (as to Dr. Tenner in her personal capacity); (3) medical battery (as to Dr. Tenner in her

17   personal capacity); (4) assault (as to Dr. Tenner in her personal capacity); (5) unlawful

18   imprisonment (as to Dr. Tenner in her personal capacity); (6) intentional infliction of emotional

19   distress (as to Dr. Tenner in her personal capacity); (7) violation of 42 U.S.C. § 1983 – Fourth,

20   Eighth, and Fourteenth Amendments (as to Dr. Tenner in her personal capacity); (8) violation of

21   42 U.S.C. § 1983 – First Amendment (as to Dr. Tenner in her personal capacity); (9) various

22   liability (as to the CCSF); (10) battery by a peace officer (as to the CCSF); (11) assault by a peace

23   officer (as to the CCSF); (12) false imprisonment (as to the CCSF); (13) violation of 42 U.S.C. §

24   1983 – Fourth, Eighth, and Fourteenth Amendments (as to the CCSF); (14) intentional infliction

25   of emotional distress (as to the CCSF); (15) battery by a peace officer (as to Officer Gomez, in

26   both his personal and professional capacities and the CCSF); (16) violation of 42 U.S.C. § 1983 –

27

28   [1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the
     ECF-generated page numbers at the top of the documents.

Fourth Amendment (as to Officer Gomez, in both his personal and professional capacities and the CCSF); (17) violation of 42 U.S.C. § 1983 – First Amendment (as to Officer Gomez, in both his personal and professional capacities and the CCSF); (18) intentional infliction of emotional distress (as to Officer Gomez, in both his personal and professional capacities and the CCSF); (19) defamation pro quod (as to the CCSF); (20) violation of 42 U.S.C. § 1983 – First Amendment (as to the CCSF); (21) intentional infliction of emotional distress (as to the CCSF). (*Id.* at ¶¶ 197-295.)

Defendants Stephen Gomez and the CCSF answered, and Defendants the Regents and Dr. Tenner again moved to dismiss. (Dkt. Nos. 109 & 115.) Plaintiff then filed an ex parte application seeking to amend his SAC to clarify his claims against the Regents and add additional claims under the California Constitution. (Dkt. No. 116.) The Court issued an order noting that because Plaintiff had already amended his complaint once by right under Federal Rule of Civil Procedure 15(a)(1), he must either obtain Defendants' stipulation to amend again or file a motion for leave to file a third amended complaint under Rule 15(a)(2). (Dkt. No. 117.) No such stipulation has been filed and Plaintiff has not moved to amend. As such, the SAC is the operative complaint.

## LEGAL STANDARD

A Rule 12(b)(6) motion challenges the sufficiency of a complaint as failing to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A facial plausibility standard is not a "probability requirement" but mandates "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). For purposes of ruling on a Rule 12(b)(6) motion, the court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the non-moving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). "[D]ismissal may be based on either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Johnson v. Riverside Healthcare Sys.*, 534 F.3d 1116, 1121 (9th Cir. 2008) (internal quotation marks and citations omitted); *see also Neitzke v. Williams*, 490 U.S. 319,

326 (1989) ("Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law.").

Even under the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2), under which a party is only required to make "a short and plain statement of the claim showing that the pleader is entitled to relief," a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 555.) "[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *see also Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) ("[A]llegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively"). The court must be able to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663. "Determining whether a complaint states a plausible claim for relief ... [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 663–64. If a Rule 12(b)(6) motion is granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotation marks and citations omitted).

Pro se pleadings are generally liberally construed and held to a less stringent standard. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In *Hebbe v. Pliler*, 627 F.3d 338 (9th Cir. 2010), the Ninth Circuit held that courts must still liberally construe pro se filings post-*Iqbal* noting that "[w]hile the standard is higher, our obligation remains, where the petitioner is pro se, particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt." *Id.* at 342 (internal quotations and citations omitted). Nevertheless, the Court may not "supply essential elements of the claim that were not initially pled." *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

**DISCUSSION**

Defendants move to dismiss Plaintiff's claims on the grounds that: (1) the statute of limitations bars Plaintiff's claims against Dr. Tenner and equitably tolling does not apply; (2) the intentional tort claims fail to state a claim for which relief can be granted; and (3) Plaintiff has not adequately pled a First Amendment Section 1983 claim.

**A. Plaintiff's Medical Negligence Claim**

Plaintiff's first cause of action pleads a claim for medical negligence against Dr. Tenner. The Court previously dismissed this claim as barred by the one-year statute of limitations under California Code of Civil Procedure Section 340.5, but granted Plaintiff leave to amend to the extent that he could plausibly plead facts which suggest that he is entitled to equitable tolling.

"In an action for injury or death against a health care provider based upon such person's alleged professional negligence, the time for the commencement of action shall be three years after the date of injury or one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the injury, whichever occurs first." Cal. Civ. Proc. Code § 340.5. "Thus, section 340.5 contains two periods of limitation, a three-year period and a one-year period, both of which must be met." *Artal v. Allen*, 111 Cal. App. 4th 273, 278 (2003). Here, Plaintiff filed his complaint within the three-year period, so only the one-year discovery period is at issue because Plaintiff's complaint was filed more than a year after the incident occurred.

Although the Court previously ruled that Plaintiff's medical negligence claims are barred by the one-year statute of limitations, in opposing Defendants' motion to dismiss Plaintiff maintains that he did not discover his medical negligence claim against Dr. Tenner until April 26, 2016, less than a year before he filed suit. In the alternative, he insists equitable tolling, equitable estoppel, or California Government Code section 855.2 toll his claims.

**1) The one-year statute of limitations bars Plaintiff's negligence claims**

As explained above, the statute of limitations in medical malpractice cases is one year from when plaintiff "discovers, or through the use of reasonable diligence should have discovered, the injury, whichever occurs first." Cal. Civ. Proc. Code § 340.5. For the purposes of section 340.5, "injury" means "both 'a person's physical condition *and* its negligent cause.'" *Artal,* 111 Cal.

8

App. 4th at 278 (internal quotation marks and citation omitted). Thus, a plaintiff "discovers" an injury when he "is aware of both the physical manifestation of the injury and [suspects its] negligent cause." *Katz v. Children's Hosp. of Orange Cty.*, 28 F.3d 1520, 1525–26 (9th Cir. 1994) (internal quotation marks and citations omitted); *see also Artal*, 111 Cal. App. 4th at 278 ("[O]nce a patient knows, or by reasonable diligence should have known, that he has been harmed through professional negligence, he has one year to bring suit."). A "patient is charged with presumptive knowledge of his negligent injury, and the statute commences to run, once he has notice or information of circumstances to put a reasonable person on inquiry, or has the opportunity to obtain knowledge from sources open to his investigation." *Artal,* 111 Cal.App.4th at 279 (internal citation, quotation marks, and emphasis omitted). The defendant bears the burden of showing that the statute of limitations bars a plaintiff's claim. *McLaughlin v. Johnson*, No. SACV1400259CJCANX, 2014 WL 12585780, at *2 (C.D. Cal. Apr. 11, 2014).

Viewing Plaintiff's allegations in the light most favorable to him demonstrates that his medical negligence claims are barred by the one-year statute of limitations. Even if Plaintiff's initial recollections of what happened to him were hazy, he began filing administrative claims regarding what had happened within 16 days of his release. Plaintiff asserts that on August 25, 2015 he "began to sort out what happened . . . by filing two public records requests." (SAC ¶ 2.) Further, he aggressively pursued various complaints regarding what happened to him at the hospital. That same day he filed a complaint with the California Department of Public Health; on September 3, 2015 he filed a patient grievance with the Hospital patients' advocate; in September or October 2015 he filed a complaint with the Medical Board of California; on February 5, 2016 he filed an administrative claim against the CCSF; and on July 7, 2016 he filed a Petition for Writ with the California Supreme Court. Thus, the complaint allegations demonstrate that Plaintiff discovered his injury and at least suspected its negligent cause no later than August 25, 2015.

Plaintiff nonetheless waited until October 24, 2016 to file suit against Dr. Tenner and the Regents. Plaintiff maintains that he did so because he wanted to first obtain medical records and other evidence "in order to avoid filing an otherwise frivolous claim against an otherwise well-decorated physician" (Dkt. No. 118 at 8). In particular, he asserts that it was not until October 13,

9

2015 that he discovered that he had not been subject to a 5150 psychiatric hold.[2] (SAC ¶ 76.) Plaintiff discovered this in the response to his September 8, 2015 request for records from the San Francisco Department of Public Health. This response also "denied to him information as to the laws, rules, or regulations justifying his detention," denied him video surveillance footage, and denied him "pricing information for the psychotropic drugs" (SAC ¶ 76).

Plaintiff's explanation is unavailing—Plaintiff suspected wrongdoing well before he received documents showing that he had not been held under 5150. Even if Plaintiff's recollections were initially hazy, as soon as he filed the first complaint he was admitting that he knew of the injury and at least suspected its cause. At this point he also had the opportunity to obtain knowledge as to the proper defendants and forum for his suit. He could not sit on his rights at that point and wait until he knew with certainty the legal contours of his claim. Drawing all inferences in Plaintiff's favor, the only reasonable conclusion is that Plaintiff knew of his injury when he filed his first complaint with the California Department of Public Health on August 25, 2015. Plaintiff alleges that he "does not remember much of what he wrote" in his initial complaints except he knows that he included that "he felt like he was treated like a terrorist" and that did not believe he was ever actually admitted to the Hospital. (SAC ¶ 73.) Thus, at the latest, the one-year statute of limitations period began to run at that time.

In *Sanchez v. S. Hoover Hosp.*, 18 Cal. 3d 93, 101 (1976), for example, the court held that the statute of limitations had expired because "the statute began to run no later than the date of plaintiff's discharge from defendants' care" because at that time, "she believed she had been a victim of malpractice." (internal citations omitted). Similarly, here, by the time Plaintiff filed a complaint with the California Department of Public Health, he believed he had been a victim of medical malpractice, otherwise there was no reason for his complaint.

Similarly, in *Righetti v. California Dep't of Corr. & Rehab.*, No.11-2717, 2012 WL 4742801, at *7 (N.D. Cal. Oct. 3, 2012), the court found that the plaintiff's filing of administrative claims established that he knew he had been injured. The court held that "[a]lthough Mr. Righetti

---

[2] Cal. Welf. & Inst. Code § 5150.05(c),

claims that there is a factual dispute as to when he discovered his injury, he has failed to explain why he did not know of the injury [at the time he filed his administrative claim.]" *Id.* Consequently, plaintiff needed to file suit within the year following his filing his first administrative claim, in order to not have his claim barred by the statute of limitations under section 340.5. *Id.* Because he did not do so, the statute of limitations expired and the court granted defendants' motions to dismiss with prejudice. *Id.* at *8.

Thus, Plaintiff's medical negligence claims are barred by the one-year statute of limitations unless Plaintiff can allege that tolling should apply.

### 2) Equitable Tolling

"Broadly speaking," equitable tolling "applies [w]hen an injured person has several legal remedies and, reasonably and in good faith, pursues one." *McDonald v. Antelope Valley Cmty. Coll. Dist.*, 45 Cal. 4th 88, 100 (2008) (internal quotation marks and citation omitted). Thus, it applies "where one action stands to lessen the harm that is the subject of a potential second action; where administrative remedies must be exhausted before a second action can proceed; or where a first action, embarked upon in good faith, is found to be defective for some reason." *Id.; see also Belton v. Bowers Ambulance Serv.*, 20 Cal. 4th 928, 978 (1999) (holding that tolling applies to the one-year statute of limitations in section 340.5). Equitable tolling "require[s] a showing of three elements: timely notice, and lack of prejudice, to the defendant, and reasonable and good faith conduct on the part of the plaintiff." *McDonald*, 45 Cal. 4th at 102 (internal quotation marks omitted). This three prong test is used to determine "whether two claims are "similar" enough that the pendency of the one should toll the limitations period for the other." *Cervantes v. City of San Diego*, 5 F.3d 1273, 1275 (9th Cir. 1993). Similarity is required because the first action must "alert[] the defendant to the necessity to investigate facts which form the basis for the [second] claim." *Dees v. California State Univ., Hayward*, 33 F. Supp. 2d 1190, 1205 (N.D. Cal. 1998).

Plaintiff argues that the statute of limitations was tolled while he pursued alternative remedies with the California Department of Public Health, the Hospital, the Medical Board of California, the California Supreme Court, and the CCSF.

### a) Plaintiff's Complaint to the California Department of Public Health

11

Plaintiff has not alleged facts sufficient to show that equitable tolling applies as a result of his complaint to the California Department of Public Health. As there are no allegations that suggest the Department of Public Health could compensate Plaintiff for any injury he claims to have suffered, the complaint did not "stand[] to lessen the harm that is the subject of a potential second action." *McDonald*, 45 Cal. 4th at 100. Similarly, the complaint was not a prerequisite to a suit for medical negligence. *Id.* Thus, equitable tolling does not apply regardless of whether the Department of Public Health interviewed Dr. Tenner in connection with Plaintiff's complaint.

In *Stone v. City & Cty. of San Francisco*, 735 F. Supp. 340, 345 (N.D. Cal. 1990), for example, the court held that the plaintiff's complaint to the San Francisco Police Department's Office of Citizen's Complaints did not equitably toll the statute of limitations on his federal civil rights action because the complaint was not a "formal, legal remedy designed to lessen the extent of [] his injuries." The court reasoned that a complaint to the Police Department serves as an internal check on police misconduct, not as a method of "compensate[ing] an aggrieved individual." *Id.* Plaintiff does not make any allegations that suggest that the complaint to the Department of Public Health is, similar to the complaint in *Stone*, anything more than an internal check.

### b) Plaintiff's Grievance to the San Francisco General Hospital Patients'

Plaintiff's patient grievance, like his Department of Public Health complaint, does not equitably toll the statute of limitations because he has not alleged any facts that suggest it could provide him a remedy similar to what he seeks in this lawsuit.

### c) Plaintiff's Complaint to the Medical Board of California

Again, Plaintiff does not make any allegations that plausibly suggest his Medical Board complaint could result in an award of compensatory damages thus mitigating the need for this lawsuit. Accordingly, it does not equitably toll the one-year statute of limitations even if Dr. Tenner was also interviewed in connection with this complaint.

### d) Petition for Writ with the California Supreme Court filed on July 7, 2016

1    Plaintiff also filed a Petition for Writ for "documents necessary to establish a litigable

2    claim." (SAC ¶ 179.) No equitable tolling flows from this Petition for the same reasons as the

3    earlier complaints.

4        **e)    Plaintiff's Administrative Claim Against the CCSF**

5    Plaintiff filed an administrative claim with the CCSF's Office of the Controller pursuant to

6    the Government Claims Act. (SAC ¶ 37; Exhibit G.) In this claim, Plaintiff named Dr. Tenner as

7    the responsible employee since at the time he believed that Dr. Tenner was a CCSF employee

8    because Plaintiff was admitted to a CCSF-owned hospital. (SAC ¶ 37.)

9    A Government Tort Claims Act claim can equitably toll the statute of limitations as it is a

10   mandatory remedy that must be exhausted before a plaintiff can make a tort claim against a City or

11   its employees. *Madani v. Cty. of Santa Clara*, No. 16-07026, 2017 WL 1092398, at *12 (N.D.

12   Cal. Mar. 23, 2017). Defendants nonetheless argue that tolling does not apply because Dr. Tenner

13   was a state employee and not a City employee; in other words, this claim *could not* have

14   eliminated the need for a suit against Dr. Tenner because there was no relief that the CCSF could

15   give on behalf of Dr. Tenner.

16   No party has cited any on-point authority. This situation appears to fall within the

17   category of cases where a plaintiff files a claim in good faith in what he believed was the proper

18   forum, but it was ultimately determined to be defective. *See McDonald*, 45 Cal. 4th at 100. Here

19   Plaintiff's CCSF claim was defective because even though Dr. Tenner was working at a San

20   Francisco City Hospital, the City and the State had an agreement to supply physicians and Dr.

21   Tenner is a state physician. The question, then, is whether Dr. Tenner had notice of the claim such

22   that she is not prejudiced by the application of equitable tolling. On Defendants' motion to

23   dismiss the Court cannot decide as a matter of law that she did not. It is not implausible that the

24   City would notify a state physician when a Government Tort Claims Act is made against the City

25   and names the state physician. Whether Dr. Tenner was notified in any respect is a matter that

26   will have to be determined on summary judgment.

27    Plaintiff did not receive a response to his Government Tort Claims Act claim from the

28   CCSF until April 26, 2016. The CCSF rejected his claim "stating that Tenner was not employed

by the CCSF." (SAC ¶ 179; Exhibit H.)  Thus, assuming equitable tolling applies, the statute started to run on August 25, 2015 and then was tolled from February 5, 2016 until April 26, 2016. Excluding the time the claim was pending from the running of the one-year statute of limitations, the October 24, 2016 complaint was timely filed.

Defendants assert that equitable tolling does not apply unless Dr. Tenner received "actual notice" citing *Hanooka v. Pivko*, 22 Cal. App. 4th 1553, 1558 (1994) (holding that where the plaintiffs were aware of the doctors' identities, they could not rely on the hospital for notifying the individual doctors of actions  be commenced against them).  The Court need not decide whether *Hanooka*, which was applying the notice provision in California Code of Civil Procedure Section 364, applies to equitable tolling as at this stage the Court cannot find that Dr. Tenner did not have actual notice.

Plaintiff's Administrative Claim against the CCSF may equitably toll the one-year statute of limitations period, thus the Court cannot dismiss the medical negligence claims as barred by the statute of limitations.  Moreover, section 364 requires a plaintiff to give a physician 90 days prior notice of the intention to commence an action against the provider for professional negligence. Cal. Code Civ. Proc. § 364(a).  "If the notice is served within 90 days of the expiration of the applicable statute of limitations, the time for the commencement of the action shall be extended 90 days from the service of the notice."  *Id.* § 364(d).  On this record, the Court cannot conclude that this extension does not apply.  *See McLaughlin*, 2014 WL 12585780 at * 2.

### 3)  Tolling under Section 855.2

The Court previously rejected Plaintiff's argument as to California Government Code section 855.2 because Plaintiff had not alleged that he was an inmate.  In his SAC, Plaintiff creates his own definition of what an inmate is and asserts that he was an inmate during his time at the Hospital.  (SAC ¶ 194-196.)  Plaintiff looks to the Google definition of inmate, which is "a person confined to an institution such as a prison or hospital" then asserts that he was confined while at the Hospital.  (*Id.*)  The parties have not cited, and the Court has not been able to locate, any cases applying section 855.2 at all, let alone explaining what "inmate" means within the context of the statute.  Nonetheless, the statute's plain language shows that it does not apply here.

14

Government Code section 855.2 provides:

> Neither a public entity nor a public employee acting within the scope of his employment is liable *for interfering with the right of an inmate of a medical facility operated or maintained by a public entity to obtain a judicial determination or review of the legality of his confinement*; but a public employee, and the public entity where the employee is acting within the scope of his employment, is liable for injury proximately caused by the employee's intentional and unjustifiable interference *with such right*, but no cause of action for such injury shall be deemed to accrue until it has first been determined that the confinement was illegal.

Cal. Gov't Code § 855.2 (emphasis added). The statute thus applies to a claim for an "employee's intentional and unjustifiable interference" with an inmate's right "to obtain a judicial determination of the legality of his confinement." *Id*. Plaintiff's medical negligence claim is not a claim that Dr. Tenner intentionally interfered with his right to obtain a judicial determination of the legality of his confinement. Section 855.2 does not apply to the negligence claim.

### 4) Equitable Estoppel

Equitable estoppel applies to toll a statute of limitations "when a plaintiff who knows of his cause of action and reasonably relies on the defendant's statements or conduct in failing to bring suit." *Stitt v. Williams*, 919 F.2d 516, 522 (9th Cir. 1990). Plaintiff alleges that he waited to bring suit because he was relying upon receiving decisions from his numerous complaints to resolve his claims. (SAC ¶ 183.) These allegations are not sufficient to show that Plaintiff relied on Defendants' statements or conduct to his detriment. *See, e.g.*, *Estate of Amaro v. City of Oakland*, 653 F.3d 808, 809 (9th Cir. 2011) (holding that the defendants were equitably estopped from asserting a statute of limitations defense because plaintiff relied on misrepresentations from the defendants.) Plaintiff has not pled facts sufficient to show equitable estoppel applies.

\*\*\*

"When a motion to dismiss is based on the running of the statute of limitations, it can be granted only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled." *Cervantes v. City of San Diego*, 5 F.3d 1273,

United States District Court
Northern District of California

1275 (9th Cir. 1993).  The Court cannot dismiss Plaintiff's medical negligence claim as barred by the statute of limitations because the Court cannot conclude as a matter of law that equitable tolling does not apply.

**B.      Plaintiff's Intentional Tort Claims**

As in Plaintiff's FAC, his SAC intentional tort claims are based on the premise that Dr. Tenner restrained Plaintiff and forcibly injected him with psychotropic drugs.  Plaintiff has not expanded upon his allegations to cure the original pleading defects; however, Plaintiff now asserts an additional basis for his battery claim against Dr. Tenner.  Defendants move to dismiss all of these claims for failure to state a claim.

**1) Assault**

Plaintiff's assault claim is nearly identical to the claim asserted in his FAC.  He alleges that Dr. Tenner assaulted Plaintiff by administering psychotropic drugs to him when he was an "involuntary detainee." (SAC ¶ 216.)  Plaintiff also asserts that Dr. Tenner assaulted him by giving him other drugs "solely for the purpose of compromising Plaintiff's cardiac system and to create a belief as to the eminency of death." (*Id.* ¶ 219.)  However, as the Court previously held, the allegation that Dr. Tenner acted with the intent "to cause physical and emotional pain upon Plaintiff" is inadequate to state a claim for assault.  (*Id.* ¶ 228.)  *See Starr*, 652 F.3d at 1216 (9th Cir. 2011) ("allegations in a complaint... may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively" and "must plausibly suggest an entitlement to relief").  Plaintiff does not allege any facts that make it remotely plausible that Dr. Tenner did as Plaintiff accuses, in other words, he has pleaded nothing more than "sheer possibility" of an assault—that is not good enough.  *Iqbal*, 556 U.S. at 606.

**2) Battery**

***Simple battery***

Plaintiff has revised his simple battery claim to now allege that Dr. Tenner committed battery when she "intentionally, recklessly, and . . . aggressively removed the wall-mounted

16

telephone from Plaintiff's hands" when Plaintiff tried to call his mother.[3] (SAC ¶ 208.) Plaintiff asserts that this occurred three times. (*Id.*) The elements of a civil battery are: (1) defendant intentionally did an act which resulted in a harmful or offensive contact with the plaintiff's person; (2) plaintiff did not consent to the contact; and (3) the harmful or offensive contact caused injury, damage, loss or harm to the plaintiff. See *Brown v. Ransweiler*, 171 Cal.App.4th 516, 526–27 (2009). "No physical harm or injury is required in order to convict a defendant of battery." *Baker v. Gipson*, No. 11-03187, 2014 WL 788354, at *4 (E.D. Cal. Feb. 25, 2014). Defendants argue Plaintiff fails to state any claim for battery because none of Plaintiff's allegations demonstrate that Dr. Tenner had the necessary element of intent. Defendants do not specifically address the telephone claim, but rather assert that all battery claims are a result of the medical care that Plaintiff consented to. Defendants have not identified any complaint allegations that would require the Court to conclude as a matter of law that the telephone incident was related to medical treatment or that Dr. Tenner did not intend to aggressively remove the phone from Plaintiff's hand. Thus, Plaintiff has sufficiently pled a cause of action for simple battery.

### Medical battery

"A typical medical battery case is where a patient has consented to a particular treatment, but the doctor performs a treatment that goes beyond the consent." *Conte v. Girard Orthopaedic Surgeons Medical Group, Inc.*, 107 Cal.App.4th 1260, 1267 (2003). Courts typically apply a negligence theory, rather than medical battery, in cases in which the defendant has "performed the identical operation to which plaintiff had consented" but is alleged to have failed to have informed the plaintiff of all the other options and inherent risks of the procedure. *Cobbs v. Grant*, 8 Cal.3d 229, 241 (1972).

Plaintiff's new claim for simple battery meets the elements of battery, but his claim for medical battery, which remains the same as it was in the FAC, does not—Plaintiff continues to assert a cause of action for medical battery because he did not consent to the use of restraints or

---

[3] In his FAC, Plaintiff claimed simple battery against Dr. Tenner for when she "touched him without his consent, directed others to touch Plaintiff without his consent, or touched or directed others to touch Plaintiff in a manner outside the scope of his consent, if any, by having him restrained and forcible administering psychotropic drugs." (FAC ¶ 95.)

17

United States District Court
Northern District of California

various drugs.  (SAC ¶ 212-213.)  Plaintiff admits to consenting to some treatment when voluntarily admitting himself to the hospital (SAC ¶ 211); thus, as specified in the Court's order to dismiss, this claim sounds in medical negligence, not battery.  (Dkt. No. 94 at 19.)  Thus the medical battery claim must be dismissed as duplicative of the medical negligence claim.

**2) False Imprisonment/Unlawful Arrest**

Under California law, false imprisonment is the "unlawful violation of the personal liberty of another."  *Asgari v. City of Los Angeles*, 15 Cal. 4th 744, 757 (1997). The elements of false imprisonment are: "(1) the nonconsensual, intentional confinement of a person, (2) without lawful privilege, and (3) for an appreciable period of time, however brief."  *Easton v. Sutter Coast Hospital*, 80 Cal. App. 4th 484, 496 (2000) (internal quotation marks and citation omitted).

Plaintiff continues to allege that Dr. Tenner "used medical science not for the treatment of illness or disease but as a means to conduct an interrogation of Plaintiff under the pretext of medical necessity" and therefore, "intended to conduct or assist with an unlawful arrest of Plaintiff."  (SAC ¶ 222.)[4]  Plaintiff now stresses his allegation that he was falsely imprisoned because Dr. Tenner would not permit his discharge when he asked to leave, despite there being no medical emergency that warranted keeping him there.  (*Id.* ¶ 223.)  Plaintiff cites Cal. Code Regs. tit. 22, § 70707(b)(10) for the proposition that patients have a right to "leave the hospital even against the advice of members of the medical staff."  However, this part of the statute has never been cited in a case of which the Court is aware.

Defendants insist that 22 C.C.R. § 72461 gives a physician lawful privilege to restrain a patient under a particular circumstance:

> Restraint and seclusion shall only be used on the signed order of a licensed health care practitioner acting within the scope of his or her professional licensure and shall be renewed every 24 hours. In a documented case of emergency, which threatens to bring immediate injury to the patient or others, a restraint may be applied, and a

---

[4] In his FAC, Plaintiff asserted that Dr. Tenner "intentionally deprived Plaintiff of his freedom of movement by use of physical restraints" compelled him to remain at the Hospital "against his will," because any consent was "effectively withdraw the moment his admission involved the use of physical and chemical restraints." (FAC at ¶ 113.)

18

> licensed health care practitioner acting within the scope of his or her professional licensure shall give an order for application of the restraint within one hour.

Plaintiff alleges, however, that there was no emergency warranting his restraint. (SAC ¶ 119.) Thus, the Court cannot conclude at this stage that this statute precludes the false imprisonment claim. Nonetheless, as held in the Court's order to dismiss, Plaintiff's challenge to Dr. Tenner's alleged use of restraints and forcible medication is a medical negligence claim, not an intentional tort claim. (Dkt. No. 94 at 21.) Thus, the false imprisonment claim must again be dismissed.

### 3) Intentional Infliction of Emotional Distress

The Court previously dismissed Plaintiff's intentional infliction of emotional distress claim because Plaintiff's conclusory allegations failed to plausibly allege any intentional conduct on the part of Dr. Tenner which was so extreme and outrageous to have caused Plaintiff severe or extreme emotional distress. Plaintiff has not added any additional allegations to his emotional distress claim since the FAC.[5] Thus, the claim must again be dismissed as Plaintiff's conclusory allegations fail to allege any intentional conduct on the part of Dr. Tenner. *See, e.g.*, *Chipman v. Nelson*, 2016 WL 4943843, at *11 (E.D. Cal. Sept. 15, 2016), report and recommendation adopted, 2016 WL 5870765 (E.D. Cal. Oct. 7, 2016) ("Such conduct is akin to medical malpractice and is not, as plaintiff in conclusory fashion suggests, tantamount to a violent attack or other extreme and outrageous conduct.")

### C. Plaintiff's First Amendment Section 1983 Claim

Finally, Plaintiff repleads his Section 1983 claim predicated on violation of his First Amendment rights. As in the FAC, this claim is based on the allegation that Dr. Tenner's conduct was "motivated" by her knowledge of Plaintiff's activities as a labor representative; however, Plaintiff now adds that Dr. Tenner knew about his employment with the U.S. Department of State

---

[5] In the FAC, Plaintiff alleged that Dr. Tenner's conduct was "outside the limitations of law and constitutional rights" and that a reasonable person would find the conduct "more than a mere annoyance, personal offence, or insult, indeed so outrageous and so injurious, such as to constitute intentional infliction of emotional distress." (FAC at ¶¶ 126, 129.)

and "his whistleblower activities which were protected under the First Amendment." (SAC ¶ 237.)

To plead a violation of the First Amendment and to recover under 42 U.S.C. § 1983, a plaintiff must show:

> (1) [that] he engaged in constitutionally protected activity; (2) as a result, he was subjected to adverse action by the defendant that would chill a person of ordinary firmness from continuing to engage in the protected activity; and (3) there was a substantial causal relationship between the constitutionally protected activity and the adverse action.

*Blair v. Bethel Sch. Dist.*, 608 F.3d 540, 543 (9th Cir. 2010). Plaintiff's Section 1983 First Amendment claim suffers from the same pleading deficiency as in his prior complaint; namely, that Plaintiff has not sufficiently alleged any plausible connection between Plaintiff's work as a labor representative or his whistleblower activities and the emergency room treatment he received in the Hospital. *See, e.g.*, *Adams v. Kraft*, No. 10-00602, 2011 WL 846065, at *5 (N.D. Cal. Mar. 8, 2011) ("Plaintiff fails to provide even circumstantial allegations that there was a substantial relationship between Plaintiff's criticism and Defendants' alleged conduct.").

Plaintiff asserts that the primary issue in this claim is not about Plaintiff's belief in a conspiracy—in fact, Plaintiff alleges that he did not allege a specific claim of conspiracy—but rather, is about a violation of his freedom of speech when he was bound and given drugs. (Dkt. No. 118 at 6.) Plaintiff alleges that Dr. Tenner "violate[d] Plaintiff's First Amendment right to freedom of thought, to suspect his government of wrongdoing, and to act upon those protected beliefs" when she had him "bound and forcibly administered" drugs because "she believed his suspicions to be the product of paranoia." (SAC ¶ 238.) Plaintiff asserts that his paranoia was in fact rational because of the conspiracy against him, and that regardless of the conspiracy, paranoia "is an issue of freedom of thought under the First Amendment" (*Id.*). The Court could not find any case law that pertains to paranoia as an exercise of freedom of thought. As with many of Plaintiff's claims, that Dr. Tenner restrained and administered drugs to Plaintiff for medical reasons may give rise to a claim for medical negligence, but not a Section 1983 claim predicated on the First Amendment. Moreover, even if paranoid speech is protected by the First Amendment,

1   to recover under Section 1983, Plaintiff must still be able to show that Dr. Tenner's actions were

2   aimed at suppressing his First Amendment protected freedom of thought.  However, Plaintiff has

3   not established any basis for connecting Dr. Tenner's behavior with Plaintiff's work or activities.

4   As such, Plaintiff's claims regarding Dr. Tenner's use of restraints and forcible medication again

5   lie in negligence and the First Amendment claim must be dismissed without leave to amend.

6   **D. Plaintiff's claims against the Regents**

7   Plaintiff did not include his claim for vicarious liability as to the Regents in his SAC.  The

8   Court previously dismissed Plaintiff's claim of vicarious liability as to the Regents with leave to

9   amend facts supporting tolling, but only in regards to Plaintiff's medical negligence claims.  (Dkt.

10  No. 94 at 23.)  Because Plaintiff has successfully pled that equitable tolling may apply to his

11  medical negligence claims, Plaintiff may amend his complaint to include a claim for vicarious

12  liability as to the Regents for his medical negligence claims.

**CONCLUSION**

13

14  For the reasons stated above, Defendants' motion to dismiss is GRANTED IN PART AND

15  DENIED IN PART, as follows:

16      1)  Defendants' motion to dismiss Plaintiff's medical negligence claims is DENIED

17          because the Court cannot conclude as a matter of law that the claims are barred by the

18          one-year statute of limitations;

19      2)  Defendants' motion to dismiss Plaintiff's intentional tort claims is GRANTED IN

20          PART AND DENIED IN PART, as follows:

21              a)  Defendants' motion to dismiss Plaintiff's claim for simple battery is DENIED;

22              b)  Defendants' motion to dismiss Plaintiff's claims for assault, medical battery,

23                  false imprisonment/unlawful arrest, and intentional infliction of emotional

24                  distress are GRANTED for failure to state a claim.

25      3)  Defendants' motion to dismiss Plaintiff's First Amendment Section 1983 claim is

26          GRANTED for failure to state a claim.

27      4)  Leave for further amendment is denied as futile; however, Plaintiff may amend his

28          complaint for the sole purpose of alleging a claim for vicarious liability against the

21

1    Regents on his medical negligence claims. Such amended complaint, if any, shall be

2    filed within 20 days of the date of this Order.  If no amended complaint is filed, Dr.

3    Tenner shall answer the complaint within 30 days of the date of this Order.  If an

4    amended complaint is filed by the deadline, Dr. Tenner and the Regents shall answer

5    the amended complaint within 20 days of the filing of the amended complaint.

6    5)    The initial case management conference scheduled for July 13, 2017 remains on

7    calendar; however, in light of the holiday, the parties shall file their joint case management

8    conference statement by July 10, 2017.

9    **IT IS SO ORDERED.**

10   Dated: June 30, 2017

11

12   _____
     JACQUELINE SCOTT CORLEY
13   United States Magistrate Judge

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28